

1998 Decisions

7-9-1998

# United States v. Moses

Precedential or Non-Precedential:

Docket 96-3632

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"United States v. Moses" (1998). *1998 Decisions.* Paper 152.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/152

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 9, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-3632

UNITED STATES OF AMERICA

v.

JOSEPH P. MOSES
Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 95-00067-1)

Argued: January 26, 1998

Before: MANSMANN, COWEN, and ALITO, Circuit Judges

(Opinion Filed: July 9, 1998)

J. ALAN JOHNSON (Argued)
1550 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

Counsel for Appellant

LINDA L. KELLY
United States Attorney

JAMES Y. GARRETT (Argued)
Assistant U.S. Attorney
633 U.S. Post Office & Courthouse
Pittsburgh, PA 15219

Counsel for Appellee

OPINION OF THE COURT

ALITO, Circuit Judge:

Joseph Moses appeals his criminal convictions for
willfully failing to file corporate tax returns, willfully filing
false personal tax returns, and conspiring to defraud the
United States by obstructing the lawful functions of the
Internal Revenue Service (IRS). Moses assigns as error the
district court's denial of his post-trial motion for a
judgment of acquittal, as well as its admission of certain
hearsay statements. We affirm.

I

While Director of the Allegheny County Maintenance
Department, Joseph Moses accepted kickbacks from
Edmond Gaudelli, a commercial vendor who did business
with the County. These kickbacks were routed through
Catherine Jean Ronschke, an employee of the Department,
to conceal the source and nature of the payments. With the
aid of the kickbacks from Gaudelli, Moses was able to meet
the financial obligations of Sadies Place, Inc., a private
corporation he had formed in 1985. Between 1985 and
1993, Moses failed to file several corporate tax returns for
Sadies Place and failed to report his kickback income on
his personal tax returns. Meanwhile, Gaudelli deducted the
kickbacks as business expenses on his returns. When
called before a grand jury in May 1994 to discuss these
matters, Gaudelli and Ronschke both made false
statements regarding their financial dealings with Moses.

Based on these and other events, Moses, Gaudelli and
Ronschke were indicted for conspiring to defraud the
United States by obstructing the lawful functions of the
IRS. See 18 U.S.C. S 371. In addition, Moses was indicted
for willfully filing a false personal income tax return, in
violation of 26 U.S.C. S 7206(1), and willfully failing to file
four corporate tax returns for Sadies Place, in violation of
26 U.S.C. S 7203.

2

At trial, Moses objected to the admission of several hearsay statements made by Gaudelli and Ronschke. The district court overruled these objections, concluding that some of the statements were admissible because they were against the declarant's penal interest, see Fed. Rule Evid. 804(b)(3), and others were admissible because they were made in furtherance of the conspiracy. See Fed. Rule Evid. 801(d)(2)(E). After the jury convicted Moses on all counts, he moved for a judgment of acquittal on the ground that there was insufficient evidence to convict him of willfully failing to file the Sadies Place returns. The district court denied the motion, and Moses brought this appeal.

II

A

Moses's primary contention on appeal is that the district court erroneously admitted out-of-court statements made by Edmond Gaudelli. Gaudelli's statements, which implicated Moses in the kickback scheme, were presented through the testimony of Michael Tutro, a government witness who had been a friend and colleague of Gaudelli's. According to Tutro, Gaudelli said on several occasions that he was "tak[ing] care" of Moses "moneywise." App. 434-37. Tutro further testified that Gaudelli would tell him where he was meeting with Moses to make these payments. The district court concluded that Gaudelli's statements were admissible under Federal Rule of Evidence 804(b)(3) as statements against penal interest, and further held that admission of Gaudelli's statements would not violate the Confrontation Clause. Moses challenges both of these rulings on appeal.

A hearsay statement made by an unavailable declarant can be admitted pursuant to Rule 804(b)(3) if, at the time of its making, "it so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Since there is no dispute over Gaudelli's unavailability, the only question under Rule 804(b)(3) is whether the admitted statements were

3

sufficiently against Gaudelli's interest so as to be deemed reliable. This determination must be made "by viewing [the statement] in context" and "in light of all the surrounding circumstances." Williamson v. United States, 512 U.S. 594, 603-604 (1994).

Moses contends that Gaudelli's statements are not admissible under Rule 804(b)(3) because "statements implicating another person in misconduct are not against the interest of the declarant." Reply Br. at 1. While this proposition holds true in many cases, it is not a per se rule. As the Supreme Court explained in Williamson:

> There are many circumstances in which Rule 804(b)(3) does allow the admission of statements that inculpate a criminal defendant. Even the confessions of arrested accomplices may be admissible if they are truly self-inculpatory, rather than merely attempts to shift blame or curry favor.

512 U.S. at 603.

Under Williamson, the proper approach in cases involving out-of-court statements implicating other people is to examine the circumstances in which the statements are made in order to determine whether they are self-inculpatory or self-serving. In Williamson, where the declarant implicated another person while in police custody and after already having confessed to the crime, the Court concluded that the naming of the defendant did little to further implicate the declarant and may have been an effort to secure a lesser punishment through cooperation. See 512 U.S. at 604 (opinion of O'Connor, J., in which Scalia, J. joined); id. at 607-08 (opinion of Ginsburg, J., in which Blackmun, Stevens, and Souter, J.J., joined). See also United States v. Boyce, 849 F.2d 833, 836 (3d Cir. 1988) (statement given in custody not reliable because circumstances indicated that it may have been "motivated by a desire to curry favor"). In the instant case, by contrast, Gaudelli made his statements to a friend during lunch conversations that took place long before Gaudelli was arrested. Under these circumstances, there is no reason to believe that Gaudelli was trying to avoid criminal consequences by passing blame to Moses.1  Moreover, by

_____

1. This conclusion is supported by the Notes of Advisory Committee to Rule 804(b)(3):

4

naming Moses, as well as the place where he was meeting Moses to make payments, Gaudelli provided self-inculpatory information that might have enabled the authorities to better investigate his wrongdoing. See Williamson, 512 U.S. at 603 (explaining that a declarant's statement as to where he hid a gun would be self-inculpatory "if it is likely to help the police find the murder weapon"). Given the context and content of Gaudelli's statements to Tutro, we agree with the district court that they were sufficiently self-inculpatory so as to satisfy the requirements of Rule 804(b)(3).

Moses's Confrontation Clause argument presents a more complicated question. The Supreme Court has held that an out-of-court statement may be barred by the Confrontation Clause even if it fits a hearsay exception. Idaho v. Wright, 497 U.S. 805, 814 (1990). The Wright Court explained that, to be admissible under the Sixth Amendment, a hearsay statement must either fall within a "firmly rooted" hearsay exception or be "supported by a showing of particularized guarantees of trustworthiness." Id. at 816-17 (citation omitted). While the district court concluded that the "statement against penal interest" exception is firmly rooted, we decline to address that issue because we believe that a hearsay statement that meets the requirements of

_____

> [A] statement admitting guilt and implicating another person, while made in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest.

. . .

> On the other hand, the same words spoken under different circumstances, e.g., to an acquaintance, would have no difficulty in

> qualifying.

28 U.S.C.A. Rule 804, p. 449 (1984). While the Supreme Court in Williamson concluded that the Advisory Notes are "not particularly clear" as to the admissibility of non-self-inculpatory statements that are collateral to self-inculpatory statements, see 512 U.S. at 601-02, the Notes are perfectly clear as to the difference between custodial and non-custodial circumstances for purposes of determining whether a statement is self-inculpatory in the first place.

5

Rule 804(b)(3) by definition possesses "particularized guarantees of trustworthiness."[2]

Rule 804(b)(3) does not allow the admission of all statements that could be interpreted as against the declarant's penal interest. Rather, the rule permits the use of a statement only if it "so far tended" to subject the declarant to criminal liability "that a reasonable man in his position would not have made the statement unless he believed it to be true." Fed. Rule Evid. 804(b)(3). As discussed above, this language requires courts to examine "all the surrounding circumstances" in order to determine whether a statement is "truly self-inculpatory." Williamson, 512 U.S. at 603-04. This examination parallels the inquiry required under the Confrontation Clause. See Wright, 497 U.S. at 820 (courts must examine "the totality of circumstances that surround the making of the statement" to determine whether the declarant's statement is "particularly worthy of belief ").[3] Accordingly, we conclude that a statement that meets the requirements of Rule 804(b)(3) also meets the requirements imposed by the Confrontation Clause. Accord Williamson, 512 U.S. at 605 (opinion of O'Connor, J., in which Scalia, J., joined). Since Gaudelli's statements were made under circumstances that render them particularly worthy of belief for purposes of Rule 804(b)(3), we affirm the district court's ruling that the statements are not barred by the Confrontation Clause.

_____

2. We note that there is disagreement among the circuits as to whether the "statement against penal interest" exception is firmly rooted. Compare United States v. Flores, 985 F.2d 770, 775-776 (5th Cir. 1993) (not firmly rooted) with United States v. Saccoccia, 58 F.3d 754, 779 (1st Cir. 1995) (firmly rooted); United States v. York, 933 F.2d 1343, 1363 (7th Cir. 1991) (same); United States v. Seeley, 892 F.2d 1, 2 (1st Cir. 1989) ("[T]he exception for declarations against penal interest would seem to be `firmly rooted.' ").

3. In examining the totality of the circumstances, courts cannot rely on corroborating evidence to conclude that a hearsay statement is trustworthy for purposes of the Confrontation Clause. Wright, 497 U.S. at 822-823. Moses correctly points out that the district court erred by relying on corroborating evidence in the instant case. See App. at 425. This error was harmless, however, given that the circumstances surrounding the making of Gaudelli's statements are alone sufficient to render them trustworthy.

B

Moses's next contention is that the district court erroneously admitted the grand jury testimony of Jean Ronschke and Edmond Gaudelli as non-hearsay under Federal Rule of Evidence 801(d)(2)(E).4  That rule provides:

> A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

Moses argues that the statements made by Ronschke and Gaudelli are not admissible under Rule 801(d)(2)(E) because they were made after the object of the charged conspiracy had been accomplished and, thus, were not statements in furtherance of the conspiracy. In making this argument, Moses relies on the Supreme Court's instruction that "after the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detention and punishment." Grunewald v. United States, 353 U.S. 391, 401-02 (1957). Moses contends that the central purpose of the instant conspiracy was to "avoid declaring . . . additional income for the years 1985-88." Appellant's Br. at 31. Since Gaudelli and Ronschke did not provide their testimony until 1994, Moses argues that, under Grunewald, it was improper to admit their statements as being in furtherance of the original conspiracy. However, contrary to Moses's characterization, the conspiracy charged in the indictment was not limited to the years 1985-1988. Rather, the indictment explicitly charged a conspiracy to defraud the IRS lasting until June 30, 1994, App. at 26, and it alleged that the conspirators engaged in more than 50 overt acts in furtherance of the

---

4. A review of the district court's order reveals that much of the grand jury testimony was admitted because it did not meet the definition of hearsay. See Supp. App. at 1-5 (holding that "some of the testimony is not being offered to prove the truth of the matter asserted, and therefore is not hearsay"). Moses has not appealed this portion of the district court's ruling.

7

conspiracy between 1989 and 1994. App. at 37-43. Thus, this case is wholly distinguishable from Grunewald, where the main objective of the conspiracy was to obtain "no prosecution" letters from the IRS in 1948 and 1949, but the government sought to imply a subsidiary conspiracy to conceal in the 1950s. 353 U.S. at 398.

We agree with the district court that this case is controlled by Forman v. United States, 361 U.S. 416 (1960), overruled in part on other grounds by Burks v. United States, 437 U.S. 1, 18 (1978). In Forman, the defendant was charged with conspiracy to evade income taxes that were owed for the period of 1942-45. Id. at 417-19. Although the last false income tax form was filed in 1946, the government contended that the conspiracy embraced "subsequent efforts . . . to evade those taxes." Id. at 420. The Supreme Court agreed, noting that "the indictment specifically alleged that the conspiracy extended from 1942 to 1953" and charged overt acts "committed as late as 1953." Id. at 423. The Court continued:

> The correct theory, we believe, was indicated by the indictment, i.e., that the conspiracy was a continuing one extending from 1942 to 1953 and its principal object was to evade the taxes of [the defendant] and his wife for 1942-1945, inclusive, by concealing their `holdout' income. This object was not attained when the tax returns for 1945 concealing the `holdout' income were filed. . . . The concealment of the`holdout' income must continue if the evasion is to succeed. It must continue until the action is barred and the evasion permanently effected.

Id. at 423-24. Like the indictment in Forman, the indictment in this case specifically alleges a continuing conspiracy to evade taxes that included overt acts of concealment after the taxes were due. In order for this conspiracy to succeed, Moses and his co-conspirators had to conceal his failure to pay taxes until any action was barred and the evasion was "permanently effected." Id. at 424. Since this object had not yet been achieved when Gaudelli and Ronschke testified before the grand-jury,5 the

_____

5. We take as accurate the government's statement that "Moses' liability for taxes owed on unreported kickbacks . . . remained open" at the time of the grand jury testimony. Appellee's Br. at 41. Moses did not dispute this factual assertion.

8

district court was entitled to conclude that Gaudelli and Ronschke made their statements in furtherance of the conspiracy. Accordingly, we affirm the order of the district court admitting the statements of Edmond Gaudelli and Jean Ronschke under Rule 801(d)(2)(E).

C

Moses's final contention is that the government presented insufficient evidence to demonstrate that he willfully failed to file tax returns for the Sadies Place business in violation of 26 U.S.C. S 7203. To prove willfulness in a criminal tax case, the government must show "that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." Cheek v. United States, 498 U.S. 192, 201 (1991). Viewing the evidence in the light most favorable to the government, we agree with the district court that a reasonable juror could have concluded that Moses acted willfully.

The evidence presented at trial revealed that Moses was the sole owner of the Sadies Place business and exercised complete control over the business. The evidence also revealed that Moses was aware of his obligation tofile tax forms for Sadies Place as he hired an accountant, Joseph Jacobs, to complete tax forms for Sadies Place and submit them to a lending institution. Nevertheless, Moses never signed any of the Sadies Place tax forms during the years in question and did not cause the forms to be submitted to the IRS until after he was indicted. Moreover, the government demonstrated that Moses had a motive to withhold the Sadies Place tax forms from the IRS. At the time the Sadies Place forms were due, Moses was trying to settle a previous liability to the IRS on favorable terms. This effort might have been jeopardized, however, had the IRS learned from the Sadies Place returns that Moses possessed additional assets. Under these circumstances, a reasonable juror could conclude that Moses knew of his duty tofile the Sadies Place returns and intentionally refrained from doing so.

Notwithstanding this strong circumstantial evidence, Moses contends that his conviction was unreasonable in

9

light of Jacobs' testimony. Jacobs, who appeared as a government witness, testified that Moses insisted the Sadies Place returns be filed. After reviewing the record, we agree with the district court that "the jury was not obligated to accept Jacobs' testimony . . . and in light of Jacobs' demeanor as a witness and his close association with Moses personally, professionally and in the criminal scheme, obviously had abundant reason to disregard it." Supp. App. at 25. Accordingly, we affirm the district court's denial of Moses's motion for acquittal on Counts Five, Six, Seven and Eight of the indictment.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit