

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-12-2002

# USA v. Waters

Precedential or Non-Precedential: Precedential

Docket No. 01-3784

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Waters" (2002). *2002 Decisions*. Paper 796.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/796

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed December 12, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3784

UNITED STATES OF AMERICA

v.

KEITH WATERS, Appellant

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. Cr. 00-522-02)
District Judge: Honorable Robert F. Kelly

Submitted Under Third Circuit LAR 34.1(a)
September 18, 2002

Before: BECKER, Chief Judge, SCIRICA and McKEE,
Circuit Judges.

(Filed December 12, 2002)

GUILLERMO L. BOSCH, ESQUIRE
111 Iron Bark Court
Collegeville, PA 19426

BRIAN J. McMONAGLE, ESQUIRE
McMonagle, Perri & McHugh
30 South 15th Street
One Penn Square West, Suite 701
Philadelphia, PA 19102

Counsel for Appellant


PATRICK L. MEEHAN, ESQUIRE
United States Attorney
LAURIE MAGID, ESQUIRE
Deputy United States Attorney for
Policy and Appeals
ROBERT A. ZAUZMER, ESQUIRE
Assistant United States Attorney
Senior Appellate Counsel
PATRICK C. ASKIN, ESQUIRE
Special Assistant United States
 Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

Counsel for Appellee

OPINION OF THE COURT

BECKER, Chief Judge.

The United States Sentencing Guidelines define "crack" cocaine as "the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate and usually appearing in a lumpy, rocklike form." U.S. Sentencing Guidelines S 2D1.1(c), Note (D). This appeal by Keith Waters ("Waters") from the sentence imposed by the District Court under the Sentencing Guidelines range for distributing crack cocaine presents the recurring question whether the government must show that the drugs seized from a defendant contained sodium bicarbonate in order to demonstrate by a preponderance of the evidence that they are crack for sentencing purposes. Waters maintains that the government must make such a showing.

Although the substance distributed by Waters contained cocaine, it contained no traces of sodium bicarbonate -- a chemical used to "cut," or dilute, the drugs. We conclude, however, that the District Court did not err when it found that the government had shown that the substance was crack, even though it did not contain sodium bicarbonate, for such a showing is not essential. Moreover, there was

2

testimony from a Drug Enforcement Agency ("DEA") chemist and a detective with ten years experience in narcotics enforcement that the niacinamide, or Vitamin B, found in the drugs connected to Waters served the same function as sodium bicarbonate -- to cut the drugs, and that the substance at issue was, in fact, crack cocaine. Accordingly, we will affirm the judgment.

I.

Waters was arrested and charged with distributing crack cocaine after DEA agents connected him to Clifton Junius ("Junius"), a man whom the DEA had observed selling crack to an informant on three different occasions; the DEA had observed Waters meet and enter a residence with Junius. After Junius was arrested following the third sale to the DEA informant, he told the DEA agents that Waters had supplied him with the crack that he had sold to the informant. Upon arrest, Waters admitted to the law enforcement officers that he had provided crack to Junius on many occasions, including four ounces that Junius had sold to the DEA informant.

The indictment charged Waters with the following: (1) conspiracy to distribute cocaine base "crack" in violation of 21 U.S.C. S 846; (2) distribution of cocaine base "crack" in violation of 21 U.S.C. S 841(a)(1); and (3) distribution of cocaine base "crack" within one thousand feet of a school zone in violation of 21 U.S.C. S 860. Waters pled guilty to the latter charge (Counts Three, Five and Seven), but he reserved the right to argue that some of the drugs were not

crack. See Fed. R. Crim. P. 11(a)(2) ("With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty . . . reserving the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion.").

At the sentencing hearing, the District Court heard testimony about the amount and identity of the drugs which Waters was charged with distributing. The Court sentenced Waters for distributing 165 grams of crack, the total calculated from the three sales Junius made to the DEA informant. However, the 27.2 grams from the first sale

3

to the informant did not contain sodium bicarbonate. It is the identity of the drugs from this sale that Waters contests; he admits that the rest of the drugs are crack since they contained sodium bicarbonate. The contested 27.2 grams contained cocaine hydrochloride and niacinamide, otherwise known as Vitamin B. Waters was sentenced to 151 months for Count Seven and 60 months each for Counts Three and Five, all three sentences to run concurrently.

The identity of the drugs is significant because a finding that the substance is crack subjects an offender to a greater penalty than if the drugs were found to be a form of cocaine other than crack. Waters was sentenced to 151 months based on a sentencing range of 151-188 months for the possession of 165 grams of crack. If the District Court had found that the government did not show by a preponderance of the evidence that the 27.2 grams that did not contain sodium bicarbonate were crack, Waters would have possessed less than 150 grams of crack, which would have subjected him to a lesser sentencing range of 121-151 months.

The government presented the testimony of DEA chemist Charles Cusamano ("Cusamano") to demonstrate that the entire 165 grams of the drugs attributed to Waters was crack cocaine. Cusamano testified on the basis of a laboratory report prepared by another DEA chemist, who later left her job at the DEA. Cusamano stated that the drugs in question did not contain sodium bicarbonate, the most common cutting agent, but rather niacinamide:

>  Niacinimade is a vitamin. It's a vitamin, Vitamin B, and it's commonly found as a cut in drug exhibits, mainly in crack exhibits because when one produces cocaine base, the niacinamide follows the conversion from the cocaine hydrochloride through to the base. And it acts as a -- a cut. [A46].

Cusamano also testified that sodium bicarbonate might have been used to cut the drugs, even if traces of the substance were not found in the final drug compound:

>  If the conversion is performed properly and you use

the correct amounts of sodium bicarbonate and

4

powdered cocaine, cocaine hydrochloride, you should have no sodium bicarbonate left when the conversion is complete. However, traditionally, what we find is that out on the street an excess of this bicarbonate is used in the conversion. [A47].

In addition, a ten year veteran of narcotics enforcement in the Philadelphia Police Department, Detective Andrew Callaghan ("Callaghan") who has "spoken with hundreds of drug users, drug dealers and persons involved in drug organizations" [A55] testified that the 27.2 grams of drugs attributed to Waters appeared to be crack cocaine:

Q. And could you tell us what you're looking at, what does the substance look like -- that makes you think [it is crack]?

A. It's an off-white chunky substance. It's in rock form. It's the base form. Cocaine hydrochloride or the salt form is generally much whiter than this, and it's crystalline, the small -- the powder.[A58.]

Callaghan also testified about the use of niacinamide as a cutting agent in making crack:

Q. And are there substances used . . . that are used to process the drugs from the powder form, hydrochloride form, into the base form?

. . .

A. A substance commonly used in Philadelphia is baking soda, which is sodium bicarbonate, and other substances that appear on the streets of Philadelphia a lot are niacinamide, which is commonly known as Vitamin B, or we've seen it in cans marked Super B which is available at most stores that you can buy crack cocaine paraphernalia. And what the person does, is they'll take cocaine hydrochloride and a mixture of sodium bicarbonate or Super B or Vitamin B or both, and depending upon their personal recipe, it could be two parts sodium bicarbonate to one part cocaine. For instance, there would be two ounces of baking soda and one ounce of cocaine or a mixture that might include sodium bicarbonate --

5

I'm sorry -- or niacinamide or it could be just niacinamide and the cocaine, and they'll pour this mixture into a boiling pot of water. And what the dilutents do, what the sodium bicarbonate does, is it attaches itself to the cut. What happens is, the

person that's processing the cocaine scoops, after it's boiling for a while, scoops the substance off the top and places it into a coffee filter or newspaper and allows the substance to dry. . . . The reason why niacinamide or Vitamin B is used often is it actually sticks to, or a portion of it sticks to, the cocaine hydrochloride, therefore, bulking up the substance so they have more product when the process is done.

. . .

I've executed many, many search warrants and confiscated bottles of niacinamide, different Vitamin B-hydrochloride compounds. [A62-63].

The District Court had jurisdiction pursuant to 18 U.S.C. S 3231 and we have appellate jurisdiction pursuant to 28 U.S.C. S 1291 and 18 U.S.C. S 3742(a). We review for clear error the determination that the government met its burden of proving by a preponderance of the evidence that the substance possessed by Waters was crack cocaine. See United States v. Roman, 121 F.3d 136, 140 (3d Cir. 1997).

II. Discussion

In Roman, we explained that "[f]or sentencing purposes, the character of the drug substance need not be shown beyond a reasonable doubt, but by a preponderance of the evidence." 121 F.3d at 141.1 Waters maintains that the

_____

1. We note that since the Supreme Court's decision in Apprendi v. New Jersey, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). Although a finding that the 27.2 grams attributed to Waters was crack would increase his penalty under the Sentencing Guidelines, we continue to use the preponderance standard since including the 27.2 grams in the quantity of crack attributed to Waters would not increase the penalty

6

government has not met its burden of proving by a preponderance of the evidence that the contested 27.2 grams are crack since the Sentencing Guidelines define crack as "usually containing sodium bicarbonate." U.S. Sentencing Guidelines S 2D1.1(c), Note (D). He, in effect, urges us to find that "usually" actually means must under the Sentencing Guidelines. We understand Waters' argument to be that since the penalty is significantly enhanced for distributing crack versus other forms of cocaine, see discussion supra, the chemical composition of crack must line up precisely with the language of the Sentencing Guidelines. Waters supports this assertion with the history of the penalty for crimes involving cocaine base: prior to the amendments to the Sentencing Guidelines in 1993, there was no definition of what constituted cocaine base, the form of cocaine subject to the enhanced penalty.

The amendments made it clear that only the crack form of cocaine base deserved a penalty enhancement and that all other forms of cocaine base should be treated as cocaine hydrochloride, the powdered form of the drug. Waters posits that this suggests that the penalty enhancement was meant to apply only to a very precise definition of crack, namely a form of cocaine base containing sodium bicarbonate.

We take this opportunity to make it clear that the law in this Circuit is that it is not necessary for the government to show that a substance contains sodium bicarbonate in order to demonstrate by a preponderance of the evidence that the drugs in question are crack cocaine. We note in

_____

beyond the statutory maximum of 80 years under 21 U.S.C. S 860(a). The 80 year statutory maximum is calculated from the following: (1) "Any person who violates section 841(a)(1) of this title or section 856 of this title . . . is . . . subject to . . . twice the maximum punishment authorized by section 841(b) of this title." 21 U.S.C. S 860(a); and (2) "In the case of a violation of subsection (a) of this section involving . . . (ii) 500 grams or more of a mixture or substance containing a detectable amount of . . . cocaine . . . (iii) 5 grams or more of a mixture or substance described in clause (ii) which contains cocaine base . . . such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years." 21 U.S.C. S 841(b).

7

this regard that the other Courts of Appeals that have addressed the issue have concluded that it is not necessary for the government to show that the substance contained sodium bicarbonate to prove that it is crack. See United States v. Diaz, 176 F.3d 52, 119 (2d Cir. 1999) ("[W]e conclude that in proving a substance is crack, the government is not required to show that the cocaine was processed with sodium bicarbonate."); United States v. Brooks, 161 F.3d 1240, 1248 (10th Cir. 1998) (noting that "not all forms of 'cocaine base' need contain sodium bicarbonate to qualify as crack for sentencing purposes"); United States v. Jones, 159 F.3d 969, 983 (6th Cir. 1998) ("[T]he presence of sodium bicarbonate is not a necessary prerequisite to a district court's factual determination that cocaine base is crack."); United States v. Abdul, 122 F.3d 477, 479 (7th Cir. 1997) ("[P]roduction [of crack] with sodium bicarbonate is not the exclusive preparation method recognized for purposes of S 2D1.1(c)."); United States v. Stewart, 122 F.3d 625, 628 (8th Cir. 1997) (finding that the use of the word "usually" in the Sentencing Guidelines "does not require . . . evidence [of traces of sodium bicarbonate] before the district court can conclude that a substance is crack cocaine").

This conclusion is also consistent with other decisions of this Court which, although not presented squarely with the question whether the government must prove by a preponderance of the evidence that the substance in question contains sodium bicarbonate in order to show that

it is crack cocaine, nonetheless held that a "precise chemical analysis is not necessary to prove that cocaine base is crack under the Sentencing Guidelines." United States v. Dent, 149 F.3d 180, 190 (3d Cir. 1998) (citing Roman, 121 F.3d at 141). See also United States v. Holman, 168 F.3d 655, 658 (3d Cir. 1999) (concluding that the government had met its burden of proof where it presented the testimony of a forensic chemist and two narcotics detectives that the substance was crack cocaine).

In addition to the case law, the plain language of the Sentencing Guidelines and the common understanding of what constitutes crack outside the Sentencing Guidelines context also support our position. Since the Sentencing

Guidelines use the language "usually," it appears from the plain language of S 2D1.1(c), Note (D) that the penalty enhancement for crack was intended to apply to substances that do not contain sodium bicarbonate. We also note that there is no precise chemical definition of crack cocaine. Rather, crack commonly refers more to the manner in which the drug is used. Crack is a form of "free-basing" whereby the user converts "sniffable cocaine crystals into a smoking 'base' form of the drug." 132 Cong. Rec. 4418 (1986) (statement of Sen. Hawkins). Crack cocaine is "a kind of dealer prepared cocaine free-base, in which powdered coke is mixed with baking soda and water to form a paste. After the concoction hardens, it looks like off-white granulated sugar; it is broken into chips or tiny lumps." 132 Cong. Rec. 9680 ( 1986) (statement of Sen. Chiles). Thus, since crack generally refers more to the way the drug is prepared and used than the specific chemical composition, the presence of sodium bicarbonate is not necessary in order for the substance to be considered crack for sentencing purposes.

While we hold that the government does not have to show that the substance contained sodium bicarbonate to meet its burden of proof, this is not to say that the government does not have to provide substantial evidence to support the determination that the drugs are crack cocaine. As stated in Roman, "the preponderance standard is not toothless. It is the district court's duty to ensure that the Government carries this burden by presenting reliable and specific evidence." 121 F.3d at 141 (quoting United States v. Lawrence, 47 F.3d 1559, 1566 (11th Cir. 1995)). Here the government presented the testimony of Callaghan, an experienced law enforcement officer, that niacinamide is commonly used in the Philadelphia area as a substitute for sodium bicarbonate. Callaghan also examined the substance in question and concluded from the appearance of the drug that it was in rock form, was intended to be smoked, and that it was thus crack. Additionally, the government presented evidence from Cusamano that the niacinamide that was found in the 27.2 grams in question serves the same purpose as the sodium bicarbonate-- namely as a cutting agent. This evidence was sufficient and

we thus conclude that District Court did not err in finding

9

that the government had shown by a preponderance of the evidence that the substance was crack. The judgment of the District Court will be affirmed.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

10