

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-18-2003

# USA v. Brigman

Precedential or Non-Precedential: Precedential

Docket No. 03-1655

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Brigman" (2003). *2003 Decisions.* Paper 78.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/78

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed November 18, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1655

UNITED STATES OF AMERICA

v.

CLARENCE D. BRIGMAN,

Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. No. 00-cr-00636-1)
District Judge: Honorable Joseph E. Irenas

Submitted Under Third Circuit LAR 34.1(a)
October 15, 2003

Before: SLOVITER, ROTH AND CHERTOFF,
*Circuit Judges.*

(Filed: November 18, 2003)

EDWARD J. CRISONINO
210 Haddon Avenue
Westmont, NJ 08108
*Attorney for Appellant*

GEORGE S. LEONE
GLENN J. MORAMARCO
Assistant U.S. Attorney
Camden Federal Bldg. & Courthouse
401 Market Street, Fourth Floor
Camden, New Jersey 08101
*Attorneys for Appellee*

---

**OPINION OF THE COURT**

---

CHERTOFF, *Circuit Judge*.

In this appeal from his conviction for distribution and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), Appellant Clarence D. Brigman alleges that the Government failed to prove the cocaine in his possession was "crack" for purposes of Section 2D1.1 of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). We determine that there was sufficient evidence for the District Court to find that Brigman possessed "crack," and we will affirm his sentence.

I.

On August 12, 1999, Brigman and co-defendant Frank Jennings were arrested after Camden, New Jersey police found a quantity of drugs in a vehicle they were driving. On September 27, 2000, both men were indicted on federal drug charges. On April 27, 2001, while Brigman remained a fugitive, Jennings pled guilty to a superseding information charging him with distribution and possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1). Brigman was arrested on April 11, 2002, and six months later, on October 9, 2002, Brigman pled guilty to a superseding information charging him with distribution of and possession with intent to distribute a Schedule II narcotic drug controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). At the time of his plea, Brigman reserved the right to argue that the drugs in his possession were not crack cocaine.

On January 10, 2003, the District Court held an evidentiary hearing to determine the identity of the controlled substance in Brigman's possession at the time of the arrest. At the hearing, a Drug Enforcement Agency ("DEA") chemist testified that the drugs seized from Brigman's possession were cocaine base. The DEA case agent also testified, and said that Brigman's cocaine was "crack." Further, the Government offered the statements of

co-defendant Jennings, who admitted that the drugs he and Brigman possessed were "crack." On February 21, 2003, the District Court determined that the drugs in Brigman's possession were crack cocaine. Brigman was sentenced to a 188 month term, the bottom of his Sentencing Guideline range of 188 to 235 months.

Jurisdiction in the District Court rested on 18 U.S.C. § 3231. This Court has jurisdiction over the challenge to the sentence because the judgment is a final order under 28 U.S.C. § 1291, and Brigman has a statutory right to appeal under 18 U.S.C. § 3742(a).

## II.

Cocaine is a naturally occurring substance that is derived from the leaves of the erythroxylon plant. *United States Sentencing Commission, Special Report to the Congress: Cocaine and Federal Sentencing Policy*, at vi (1995) [hereinafter "*Special Report*"]. There are five basic forms of the drug: coca leaves, coca paste, powder cocaine, freebase cocaine, and crack cocaine. *Id.* at 11. There are three base forms of cocaine: coca paste, freebase cocaine, and crack cocaine. *Id.* Coca paste, not usually imported into the United States, is "a chunky, off-white to light-brown, putty-like substance that exists primarily as an intermediate product in the processing of coca leaves into powder cocaine." *Id.*

Both freebase cocaine and crack cocaine are forms of cocaine base produced from powder cocaine. *Id.* at 13. In this form, the powder cocaine has been "freed" from the salt substrate and is once again in a base form similar to that of coca paste. *Id.* To create freebase cocaine, powder cocaine is dissolved in water and a strong alkaloid solution, typically ammonia is added, along with another organic solvent like ether. *Id.* The use of this process was first documented in the 1970s, but "many resisted the freebasing process because of its complexity and potential danger. Ether, a highly volatile and flammable solvent, will ignite or explode if the freebase cocaine is smoked before the ether has evaporated entirely." *Id.* Cocaine base prepared using the freebase method was replaced by the

crack method. *See, e.g., United States v. Johnson*, 976 F. Supp. 284, 290 (D. Del. 1997) ("[F]reebase cocaine . . . seems to have outlived its utility with the emergence of crack cocaine.")

To produce crack cocaine, the powder cocaine is dissolved in a solution of sodium bicarbonate[1] and water, which is then cooked, leaving a solid substance called crack cocaine. *Special Report* at 14. "The crack cocaine is broken or cut into 'rocks,' each typically weighing from one-tenth to one-half a gram." *Id.* This method is considered to be the most common method of producing cocaine base. *See United States v. Barbosa*, 271 F.3d 438, 462 (3d Cir. 2001). "Crack" is not a chemical term; it describes a substance that results from a general method for making cocaine base out of powder cocaine. *See United States v. Waters*, 313 F.3d 151, 156 (3d Cir. 2002). The Sentencing Guidelines note, " '[c]rack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy rocklike form." U.S.S.G. § 2D1.1(c), Note D. *See also Waters*, 313 F.3d at 156.[2]

This Court has noted that, "[t]he Sentencing Commission defines cocaine base for sentencing purposes to mean the form of cocaine base commonly known as crack." *United States v. James*, 78 F.3d 851, 858 (3d Cir. 1996); *see also Barbosa*, 271 F.3d at 462. Whether a substance is crack cocaine is a finding of fact subject to review for clear error. *United States v. Roman*, 121 F.3d 136, 140 (3d Cir. 1997). Under this standard, "[f]actual findings are clearly erroneous if the findings are unsupported by substantial evidence, lack adequate evidentiary support in the record, are against the clear weight of the evidence or where the district court has misapprehended the weight of the evidence." *Id.* (internal citations omitted). The District

1. Typically known as baking soda.

2. To be sure, Brigman's cocaine did not contain sodium bicarbonate; however, the government is not required to show that a substance contains sodium bicarbonate in order to demonstrate by a preponderance of the evidence that the drugs in question are crack cocaine. *Waters*, 313 F.3d at 155.

Court's factual findings during sentencing cannot be disturbed unless this Court is "left with a definite and firm conviction that a mistake has been made." *United States v. Dent*, 149 F.3d 180, 189 (3d Cir. 1998).

The Government must prove, by a preponderance of the evidence, that a substance is "crack" when applying U.S.S.G. § 2D.1.1 for cocaine base. *See James*, 78 F.3d at 858. To satisfy its burden, this Court has held that the government must present "reliable and specific evidence" that the substance in question is crack. *Roman*, 121 F.3d at 141 (internal quotations omitted).

## III.

In this case, the Government met this burden. At the evidentiary hearing to determine the identity of Brigman's controlled substance, Carolyn Roche, a forensic chemist with the DEA, analyzed the drug samples seized from Brigman and Jennings's vehicle. She described Brigman's first sample, amounting to 228 grams, as "compressed tan material" that was "like chunks of cookie, like hard, but not rock hard, not cement hard, but, you know, you can break it and grind it, but compressed. It's not a loose powder." (App. 76-77). Jennings's sample, weighing 0.72 grams, was in nine separate little baggies and consisted of "off-white chunky, chunky substance". (App. 77-78) Based on her lab analysis of the samples, Roche concluded that both samples were cocaine base.

Brigman suggests that his cocaine should not be deemed "crack" cocaine because Roche did not specifically testify that his cocaine was "crack" per se. But Roche testified, "[c]rack isn't a scientific term so we don't call anything actual crack. We just determine it's cocaine base and crack is left up to the street individual knowing what it looks like, individual or on a street level which we're not on. We established it's cocaine base." (App. 87)

Roche also testified that the shape of Brigman's cocaine sample, a "cookie" shape, suggested that it was crack cocaine. She noted, "[g]enerally when cocaine hydrochloride is processed into cocaine base the container that is used in the processing is usually a round, is usually a round cup

or beaker or bucket or something along those lines. And when it's processed the cocaine takes the shape, the cocaine base takes the shape of the container so it's usually seen in a round form . . . you can see the round flat shape." (App. 94)

The second Government witness was DEA Special Agent Sam Trotman, the case agent for the investigation. Trotman served as a special agent for the DEA for 13 years and also spent five years as an investigator with the Camden County Prosecutor's Office, where he worked for three years in the narcotics unit. Over his career, he had been involved in several thousand drug arrests, with several hundred of them involving "crack" cocaine.

Trotman testified that the cocaine seized from both Brigman and Jennings was crack cocaine. He related that while cocaine powder is a white powdery substance, "crack" cocaine is more of a tan hard chunky substance — a description which matches Brigman's cocaine. Like DEA chemist Roche, Trotman also testified that the cocaine seized from under Brigman's car seat had a round beveled edge, which, he stated, suggested that the cocaine had been "cooked" in a manner that crack is "cooked."[3] He also stated that in his experience working in law enforcement, he had never heard of coca paste being in the Philadelphia or Camden area. Given Trotman's experience as a law enforcement officer involved in drug transactions, it was reasonable for the District Court to rely on his testimony. *See, e.g., Roman*, 121 F.3d at 141-42; *see also Waters*, 313 F.3d at 156; *Dent*, 149 F.3d at 190.

Trotman also testified that Jennings had told him that Brigman had sold him "crack" on a regular basis. Jennings testified at his guilty plea hearing that the nine baggies of drugs found in his pocket were "crack" cocaine, and that he got it from Brigman. Jennings also stated that the drugs under Brigman's seat belonged to Brigman and that they were "crack."

---

3. Agent Trotman testified that when cooked, crack takes the form of the vessel in which it is cooked; the cocaine seized from Brigman had a round beveled edge, which would indicate that it was cooked in a pot or some other similar round object, as crack is normally cooked.

Brigman argues that the District Court erred in considering Jennings's testimony because it was hearsay, was self-serving, and deflected blame on Brigman. Hearsay is fully admissible at a sentencing hearing, so long as it has sufficient indicia of reliability. *See* U.S.S.G. § 6A1.3(a); *United States v. Deaner*, 1 F.3d 192, 199 n.3 (3d Cir. 1993).

In this case, the record appears to provide more than sufficient indicia of reliability. First, as the District Court noted, Jennings's statements during his guilty plea were given under oath. Second, all the statements he gave were against his penal interest, since admitting to possessing "crack" cocaine is significantly more serious than admitting to possessing powder cocaine. *Cf. United States v. Moses*, 148 F.3d 277, 280 (3d Cir. 1998); *see also United States v. Szakacs*, 212 F.3d 344, 352-53 (7th Cir. 2000).

The District Court's factual conclusion that the drugs were "crack" cocaine was also supported by the drugs' physical appearance: the contraband had a lumpy, rock-like appearance characteristic of crack, and had a round, beveled edge, another common marker of crack.

IV.

Brigman also argues that the District Court committed legal error by misapprehending the distinctions between cocaine base that is produced by the freebase method and cocaine base that is produced by the crack method. The District Court speculated that the cocaine base created by the freebase method would be treated the same as cocaine base produced by the crack method, so long as the cocaine produced from freebasing was otherwise indistinguishable from crack. Based on this rumination, Brigman urges that the District Court sentenced him under the misapprehension that cocaine base produced by freebase is legally the same as cocaine base produced by the crack method.

While the issue has not been resolved, the existing cases suggest that cocaine produced by the freebase method is not treated as "crack" under the Guidelines. *See James*, 78 F.3d at 857-58; *United States v. Booker*, 70 F.3d 488, 493-94 (7th Cir. 1995); *Johnson*, 976 F. Supp. at 290 & n.8.

Nevertheless, the District Court's thoughts on how freebase-produced cocaine base would be treated under the Guidelines have no import here. As the District Court found, there were no facts in the record that would permit an inference that Brigman's drugs were produced by the freebasing process.[4] Brigman did not present evidence, scientific or otherwise, which suggested that his cocaine was the product of the freebasing technique. The District Court's musings concerning how cocaine base produced by the freebase method would be treated under the Guidelines were irrelevant and did not lead to any error in sentencing Brigman.

## V.

For the reasons set forth, we will affirm the judgment of conviction and sentence.

A True Copy:
       Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*

---

4. DEA chemist Roche testified that the chemical composition of Brigman's drugs was that of cocaine base. The likelihood of the seized cocaine base being coca paste or freebase cocaine is small. First, coca paste is not usually found in the United States. Second, freebasing cocaine is considered to be highly dangerous and not conducive for producing large amounts of cocaine, like Brigman's 228 grams.