UNITED STATES of America

v.

Evette Merritt PARKER,* Appellant.

* (Amended per Clerk's
Order of 8/30/07).

No. 07–2463.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) Oct. 22, 2007.

Filed Oct. 24, 2007.

George S. Leone, Office of United States Attorney, Newark, NJ, Glenn J. Moramarco, Office of United States Attorney, Camden, NJ, for Appellee.

Anne C. Singer, Haddonfield, NJ, for Appellant.

Before: SLOVITER, CHAGARES, and HARDIMAN, Circuit Judges.

OPINION

SLOVITER, Circuit Judge.

Evette Merritt Parker ("Parker") pleaded guilty to one count of embezzling more than $1,000 from the United States in violation of 18 U.S.C. §§ 641 and 2 and one count of conspiracy to do the same in violation of 18 U.S.C. § 371. She was sentenced, in principal part, to a ten-month term of imprisonment on each count, to run concurrently. Parker now appeals, challenging the District Court's findings at sentencing. Specifically, she contends that the District Court improperly relied on hearsay evidence lacking sufficient indicia of reliability and that it erred in finding that the offense involved ten or more victims and a loss of more than $30,000. We will affirm.

I.

In 2003, agents from the Treasury Inspector General for Tax Administration Office ("TIGTA") discovered that at least fourteen different taxpayers' refunds had

been electronically deposited into bank accounts maintained by Parker and her son, George Merritt III ("George"). Subsequent interviews with most of those taxpayers revealed that Parker had filed the taxpayers' tax returns in 2001 and 2002, but had never given the subsequent refunds to their rightful owners. In March of 2005, TIGTA agents made initial contact with Parker and George, both of whom denied any wrongdoing. They were formally charged in June of 2006. Parker entered her guilty plea on October 31, 2006.

At her plea allocution, Parker confirmed the following facts: In 2002 and 2003, she was self-employed as a preparer of income tax returns. Parker agreed to complete and file her clients' tax returns so that they would receive their refunds via checks mailed to their addresses. Instead, she filed the tax returns fraudulently, claiming that her clients authorized their tax refunds to be electronically deposited into bank accounts maintained by her and/or George. After the refunds were deposited into those accounts, Parker and George converted the refunds to their own use by withdrawing, transferring and spending the funds.

In its presentence report ("PSR"), the Probation Office concluded that Parker's crime had fourteen known victims and resulted in a loss of greater than $30,000. Parker conceded the existence of at least seven victims, but argued that she had impacted fewer than ten victims and that the combined loss of her actual victims was less than $30,000. The government, meanwhile, conceded that three taxpayers listed as victims in the presentence report were not victims, but maintained that the other eleven taxpayers were victims. Thus, the central dispute at sentencing concerned the status of four individuals—Henrietta Roher ("Roher"), Janine Hughes–McCants ("McCants"), Ovetta Merritt ("Ovetta"),

and Kimberly Kearse ("Kearse")—whose refunds were indisputably deposited into Parker's accounts, but who otherwise are the subject of conflicting evidence.

Parker's sister, Vernetta Merritt ("Vernetta"), testified that she visited Roher on an unspecified date shortly before Parker's sentencing. She stated that Roher was mentally unstable and quite ill, but that Roher was breathing all right and did not have a weak voice. Vernetta testified that Roher stated that Parker had never done her any wrong, that she had asked Parker to do her taxes, and that she had received a $3,888 refund in 2000 or 2001. Although Roher was afraid to come to court, she agreed to write a letter, stating the above, and Roher directed her daughter to write a letter to Parker's attorney, which she then signed multiple times (in varying states of legibility) because she was having difficulty writing. Roher's letter, dated April 17, 2007, was provided to the District Court before sentencing.

The government's witness, TIGTA agent Elizabeth Pappaceno ("Agent Pappaceno"), testified that she attempted to interview Roher in 2003, but Roher declined to get involved with the investigation. After learning of Roher's letter, Agent Pappaceno conducted a ten-minute phone interview with Roher on April 23, 2007, and a thirty-minute in-person interview with Roher on April 25, 2007. Roher told Agent Pappaceno that when Vernetta came to her house on April 19, 2007, she hadn't been aware of what she was signing and had just taken her medication. Roher stated that her daughter wrote the letter, that she didn't know the contents of the letter, and that she only signed it because she wanted to get Vernetta out of her house so she could take a nap. Roher stated that she never received her refund.

Following the presentation of this evidence, the District Court commented that

this was a "very strange case," but that it "credit[ed] the testimony of the agent that [Roher] did tell the agent what the agent has written and testified about." App. at 80. The District Court found by a preponderance of the evidence that Roher was a victim of Parker's crime.

Agent Pappaceno and Vernetta also testified about their interactions with McCants. Agent Pappaceno testified that in an interview conducted on August 6, 2003, McCants stated that Parker had prepared her taxes and that she was expecting a tax refund. McCants had planned to move into Parker's apartment building with that refund, but she never moved into the building or received her refund.

Vernetta testified that McCants approached her at some unspecified date before Parker's sentencing to inform her that the government had offered her additional money to say that she had not received her refund, and that although McCants was afraid to testify, she offered to write a letter stating that she had received her tax money in a timely fashion as a result of living in one of Parker's apartments. (On cross-examination, however, Vernetta conceded that she did not know whether McCants ended up living in one of Parker's apartments.) Although Vernetta was present when McCants wrote her letter, Vernetta did not dictate the letter; rather she "just asked her the questions and asked her would she answer those questions." App. at 71. The letter states that McCants let Parker deposit her refund in Parker's account because she was about to rent an apartment from her in 2002 and that she received her tax refund of $3,950 in that same year. In addition, Parker's attorney stated that McCants told her that she had received her tax refund money from Parker.

With respect to McCants, the District Court concluded, "I don't know what to think because she did send this letter to Miss Singer, addressed to Anne Singer [defense counsel]. And the witness explained how it—that all came about, in which she said that she received her tax refund in 2002. That doesn't jibe with what she told the agent in this matter." App. at 80. The District Court found by a preponderance of the evidence that McCants was a victim of Parker's crime.

Ovetta is another one of Parker's sisters. Agent Pappaceno testified that she first came into contact with Ovetta at the same time she made initial contact with George. At that meeting, Ovetta instructed George not to speak to the government agents. Ovetta then appeared at George's guilty plea on February 23, 2007, and was interviewed by Agent Pappaceno and Agent Gary. At that interview, Ovetta stated that Parker had prepared a past tax return for her, but that she did not remember getting her refund. However, Ovetta also said that George and Parker never took anything from her and that she was not aware that she was owed anything by them. Finally, Ovetta denied having received a $4,000 check from George.[1]

Prior to sentencing, Ovetta sent a letter to the District Court referring to her "manipulating and misleading" answers during the interview with Agents Pappaceno and Gary. App. at 33. She stated that Parker never took any money from her and that she was "not entitled to any reimbursements whatsoever." App. at 33. At the sentencing proceeding, Ovetta offered testimony directly contradicting her previous statements to the investigators: (1) that Parker gave her a $3,800 cash refund from her 2000 tax return when it arrived in

---

1. The government contends that the $4,000 check was a belated attempt by George and Parker to provide Ovetta her refund.

2001, and (2) that she recalled the circumstances of the $4,000 check, which she was supposed to give to another of Parker's victims.

Following its own examination of Ovetta, the District Court concluded that "Ovetta Merritt's testimony is not credible in any way, shape or form. And I don't give any credence to what she has said in this courtroom. I think that her explanation of the $4,000 is frankly ridiculous. And she did, in fact, mislead or attempt to mislead the agents in this matter on numerous occasions." App. at 80. The District Court found by a preponderance of the evidence that Ovetta was a victim of Parker's crime.

Finally, the parties argued briefly about whether Kearse was a victim. The IRS deposited Kearse's $2,372 refund into Parker's account, and Kearse told the agents that she received a cashier's check from Parker some months later in the partial amount of $2,300. At sentencing, Parker argued that the missing $72 could have been retained as payment for Parker's services or to satisfy some other debt. Nevertheless, the District Court found by a preponderance of the evidence that Kearse was a victim, stating: "Just because she was given some money back by the evidence doesn't mean that she's not a victim under the Sentencing Guidelines." App. at 80.

Having found that Roher, McCants, Ovetta, and Kearse were victims, the District Court increased Parker's offense level by six points for causing a loss between $30,000 and $70,000, *see* U.S.S.G. § 2B1.1(b)(1)(D), and by two points for impacting ten or more victims, *see* U.S.S.G. § 2B1.1(b)(2)(A)(i). The District Court found that Parker had a total offense level of 12 and a criminal history category of I, placing her in a Guidelines range of 10 to 16 months imprisonment. After considering the factors set forth in 18 U.S.C. § 3553(a), the District Court sentenced Parker to 10 months imprisonment on each count, to be served concurrently. Parker timely appealed.[2]

## II.

The admissibility of hearsay evidence relied upon at sentencing is a question of law, and is subject to plenary review. *See United States v. Brothers,* 75 F.3d 845, 848 (3d Cir.1996). "With respect to the district court's findings of fact, the government bears the burden of proof by a preponderance of the evidence." *Id.* The court of appeals reviews those "findings to determine whether they are clearly erroneous." *Id.*

## III.

Parker contends that the hearsay testimony of Roher and McCants did not have sufficient indicia of reliability to support its probable accuracy because the statements relied upon by the District Court were uncorroborated and directly contradicted by other hearsay testimony of those same declarants. Moreover, she argues that the District Court did not sufficiently explain why it credited one hearsay account over another.

"Hearsay is fully admissible at a sentencing hearing, so long as it has sufficient indicia of reliability." *United States v. Brigman,* 350 F.3d 310, 315 (3d Cir.2003). This standard for the admissibility of evidence protects the defendant's due process rights, *see United States v. Paulino,* 996 F.2d 1541, 1547 (3d Cir.1993), and "should be applied rigorously." *United States v. Miele,* 989 F.2d 659, 664 (3d Cir.1993).

**2.** The District Court had jurisdiction over this action pursuant to 18 U.S.C. § 3231. This court has jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

The existence of inconsistency alone does not deprive a hearsay statement of sufficient indicia of reliability, however, and the district court may even "credit hearsay evidence over sworn testimony, especially where there is other evidence to corroborate the inconsistent hearsay statement." *Id.*

The facts of this case reveal a specific pattern of criminal behavior. Upon filing her clients' tax returns, Parker directed the IRS to deposit those clients' refunds into bank accounts maintained by Parker and her co-defendant son. She then converted some or all of the proceeds from those refunds to her own use. Parker does not contest or rebut the sworn testimony of former clients asserting that they did not authorize Parker to deposit their refunds into Parker's bank accounts and that Parker never transferred the proceeds from those refunds to them. Rather, in an attempt to dispute that there is a pattern of criminal conduct here, Parker offers the unsworn testimony of several former clients asserting that they received their refunds from Parker after those refunds had been deposited into Parker's account.[3] Nevertheless, the sworn testimony of multiple victims, combined with the facts admitted to at Parker's guilty plea, comprise circumstantial evidence that the tax refunds deposited into the bank accounts controlled by Parker were not turned over to her clients. This evidence corroborates the hearsay testimony relied upon by the District Court at sentencing.

In addition, the statements of Roher and McCants to the government regarding Parker's failure to give them their refunds are factually consistent with the sworn testimony of the conceded victims.

*See United States v. Berry,* 258 F.3d 971, 976 (9th Cir.2001) ("One factor evidencing the reliability of hearsay statements ... is external consistency."). Roher's testimony was consistent on the two separate occasions she spoke with Agent Pappaceno and explains, rather than contradicts, the circumstances of Vernetta's visit and Roher's nearly illegible signature. *Cf. United States v. Leekins,* 493 F.3d 143, 151 (3d Cir.2007) (concluding that the "detail and internal consistency" of police report, "together with the other corroborating material, provide sufficient indicia of the reliability of the officers' version of the shooting"). Moreover, Roher and McCants were aware that Agent Pappaceno's questions were asked in the course of a criminal investigation, and they had every incentive not to be dishonest and open themselves up to charges of making false statements. Indeed, Vernetta testified that both women were afraid to come to court to offer sworn testimony in Parker's defense. Thus, despite the contradictory hearsay testimony solicited by Parker and her sister, the statements of Roher and McCants to the government had "sufficient indicia of reliability to support [their] probable accuracy." U.S.S.G. § 6A1.3(a).

This result is not inconsistent with the court's decisions in *Brothers* and *Miele.* Most importantly, in both those cases the district court relied on a hearsay statement that was directly contradicted by the declarant's own sworn testimony, without accounting for the discrepancy. *See Brothers,* 75 F.3d at 847; *Miele,* 989 F.2d at 662, 666. In neither case was there any evidence corroborating the hearsay statement upon which the district court based

---

**3.** Parker's sister Ovetta is the only one of Parker's former clients to have offered sworn testimony that Parker returned a refund. However, Ovetta's testimony was contradicted by her early statements to the TIGTA agents and not credited by the District Court, which deemed it "ridiculous." We defer to the District Court's credibility determination here, as it is not clearly erroneous.

its finding. *See Brothers,* 75 F.3d at 849; *Miele,* 989 F.2d at 665. Further, we emphasized the declarant's demonstrated lack of credibility in both cases. *See Brothers,* 75 F.3d at 853 (noting that the relied-upon statement was made right after the declarant asked the police how he could help himself); *Miele,* 989 F.2d at 666–67 (questioning the general reliability of the declarant, a drug addict informant). None of these vital factors are present here. Rather, the District Court chose between conflicting hearsay statements and credited the account offered by the government, which was consistent with the sworn testimony of other victims and the criminal behavior to which Parker pleaded guilty.

Parker also challenges the sufficiency of the evidence underlying the District Court's determination that the disputed victims were, in fact, victims. Considering the statements of Roher and McCants in the totality of the evidence presented, the District Court did not clearly err in finding that Roher and McCants were victims. Furthermore, in light of the evidence that Parker routinely misappropriated her clients' tax refunds, the District Court's express credibility determinations, and the state of the record at sentencing, the District Court did not commit clear error in finding that Ovetta and Kearse were victims.

### IV.

For the above-stated reasons, we will affirm the judgment of conviction and sentence.