

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-15-1997

# United States v. Roman

Precedential or Non-Precedential:

Docket 96-1962

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"United States v. Roman" (1997). *1997 Decisions*. Paper 194.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/194

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

iled August 15, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 96-1962 and 96-1963

UNITED STATES OF AMERICA

v.

SAMUEL ROMAN, a.k.a. SAMUEL MERCADO

SAMUEL ROMAN,

Appellant

UNITED STATES OF AMERICA

v.

OSCAR ROMAN, a.k.a. OSCAR MERCADO,

Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 95-cr-00335-1)
(D.C. Crim. No. 95-cr-00335-2)

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 27, 1997

Before: GREENBERG and MCKEE, Circuit Judges,
GREENAWAY,* District Judge.

(Filed August 15, 1997)

_____

* The Honorable Joseph A. Greenaway, Jr., United States District Judge
for the District of New Jersey, sitting by designation.

Rocco C. Cipparone, Jr., Esq.
203-205 Black Horse Pike
Haddon Heights, NJ 08035

Attorney for Appellant
Oscar Roman

Jeffrey M. Lindy, Esq.
1760 Market St.
Suite 600
Philadelphia, PA 19103

Attorney for Appellant
Samuel Roman

Michael R. Stiles, Esq.
United States Attorney
Walter S. Batty, Jr., Esq.
Assistant United States Attorney
Chief of Appeals
Kristin R. Hayes, Esq.
Assistant United States Attorney
615 Chestnut St.
Suite 1250
Philadelphia, PA 19106

Attorneys for Appellee

**OPINION OF THE COURT**

McKEE, Circuit Judge.

In this consolidated appeal, we are asked to review the sentences of Samuel Roman, who pled guilty to possession with intent to distribute cocaine base and aiding and abetting, and Oscar Roman, who pled guilty to possession with intent to distribute and distribution of cocaine base as well as carrying a firearm in connection with a drug-trafficking crime. The district court sentenced both Samuel and Oscar Roman to 188 months of imprisonment for the drug related offenses and imposed a consecutive sentence of five years on Oscar Roman for the firearm offense. Both

defendants contend that the district court erred by imposing enhancements for "crack cocaine" and concluding that the government had not breached their plea agreements by refusing to file a downward departure motion. Samuel Roman raises the additional argument that the district court erred by refusing his request for funds to retain a psychologist to testify on his behalf at sentencing. For the reasons that follow, we will affirm.

I.

These prosecutions are based on three separate incidents. On September 2, 1994, during surveillance of the 4400 block of North 4th Street, Philadelphia police officers observed Bobby Rodriguez and an unknown purchaser engage in a drug transaction with Samuel Roman. After the purchaser paid Rodriguez for the drugs, he handed the money to Roman. The police stopped Rodriguez and Roman and seized fifty vials of crack cocaine from Rodriguez and $494 in cash from Roman.

On November 7, 1994, Philadelphia police officers, again surveilling the 4400 block of North 4th Street, saw William Serrano engage in a drug sale. An undercover officer then approached and purchased two vials of crack from Serrano. Serrano then handed the money to Oscar Roman, who was seated in a nearby car. Backup officers arrested Serrano and Roman. They seized eleven vials of crack from Serrano and a loaded weapon and $259 in cash from Roman. A subsequent search of the car disclosed additional "bundles" containing numerous vials of crack cocaine.

On November 22, 1994, police officers were once again surveilling the same block of North 4th Street when they saw Samuel Roman hand a brown paper bag to Oscar Roman and another individual. Oscar Roman and the other individual then hid the paper bag in a vacant lot. Samuel collected money from the two and left. Police apprehended Samuel in a car shortly thereafter. They found $1,494 on his person and a bundle of suspected crack cocaine in the car. The officers searched the vacant lot and found the brown paper bag that Oscar and the other individual had hidden. It contained fourteen bundles of crack, and three more bundles were found nearby.

Samuel and Oscar Roman both were charged with possession with intent to distribute crack cocaine (21 U.S.C. § 841 (a)(1)), and Oscar Roman was also charged with distribution of crack cocaine (21 U.S.C. § 841(a)(1)) and carrying a firearm in connection with a drug-trafficking crime (18 U.S.C. § 924(c)). Defendants were initially named in an indictment that specifically charged them with offenses involving "crack cocaine." However, the government obtained a superseding indictment that identified the controlled substance at issue as "cocaine base."

Both defendants pled guilty to all of the offenses in the superseding indictment pursuant to standard written plea agreements. In those agreements, each defendant agreed "to provide truthful, complete, and accurate information," "to provide all information concerning his knowledge of, and participation in, the distribution of cocaine base and any other crimes about which he has knowledge," and not to "protect any person or entity through false information or omission." App. at 19a–20a, 26a–27a. During the change-of-plea hearings that followed their initial plea of not guilty, the government clarified their obligations under the plea agreements by acknowledging that defendants could provide historical information only, and did not have to "engage in affirmative investigative techniques." App. at 59a.

A sentencing hearing was held on October 16, 1996. Both defendants argued that the government had the burden of proving that the controlled substance involved in this case was crack cocaine. To meet its burden, the government only presented the testimony of Officer Wilbert Kane, the officer assigned to the case. Kane had twelve years of experience in investigations and prosecutions of persons charged with crack cocaine distribution and had trained state and federal narcotics officers. Over defense objections, Kane testified that the substance seized from defendants was crack cocaine. His conclusion was based solely upon the way the substance was packaged. Kane conceded that the substance seized from the defendants did not contain sodium bicarbonate, a residue common in crack cocaine. However, he explained that the head of the police laboratory had told him that the absence of sodium

4

bicarbonate did not mean the substance was not crack because, if the "cook" was good, sodium bicarbonate would not be found in the finished crack. App. at 74a.

Kane testified that he had seen crack cocaine cooked and that he had seen the substance that was seized from the defendants. For some reason, he was not asked to compare that crack's appearance with the substance seized from the defendants. He did, however, testify that the drugs taken from the defendants was in vials with color caps which is how crack cocaine is typically packaged for sale in Philadelphia. He testified that "powder cocaine," in contrast, is usually packaged in ziplock bags. App. at 75a. Based solely upon the packaging, Kane concluded that the substance seized from the defendants was crack. The court accepted that conclusion and sentenced the defendants accordingly over defense objections.

Defendants also objected to the government's decision not to file a downward departure motion. They argued that this decision breached their plea agreements and that government investigators were angry because they were only able to provide "historical" information. The defendants maintained that they only had historical information and that their agreements did not require them to provide more. The government, however, argued that it was the Romans who breached the agreement by not providing complete information. In support of its argument, the government again presented the testimony of Officer Kane who testified that "the accumulation of intelligence that [the Romans] would have gathered while in the business far exceeded what they were willing to tell us in the proffer." App. at 83a. Kane conceded, however, that the information the Romans had provided was accurate. The district court concluded that the government had not breached the plea agreements.

Samuel Roman was sentenced at the bottom of the applicable guidelines range to 188 months imprisonment. Oscar Roman was also sentenced to 188 months on the narcotics offenses as well as to a consecutive sentence of 60 months stemming from his 924(c) conviction. These appeals followed.

This Court has jurisdiction to review final sentences pursuant to 18 U.S.C. § 3742(a).

5

**Discussion**

II.

Defendants contend that the district court erred in finding that the controlled substance involved in their case was crack cocaine and sentencing them pursuant to the guideline enhancement for that drug.1 The district court's determination that the substance seized from defendants was crack cocaine is a finding of fact that we review for clear error. See United States v. Johnson, 12 F.3d 760, 765 (8th Cir. 1993). "Factual findings are clearly erroneous if the findings are unsupported by substantial evidence, lack adequate evidentiary support in the record, are against the clear weight of the evidence or where the district court has misapprehended the weight of the evidence." Davin v. United States Dep't of Justice, 60 F.3d 1043, 1049 (3d Cir. 1995)(internal quotations omitted). However, "[t]his court has plenary review of issues of law raised by the district court's application of the Sentencing Guidelines." United States v. James, 78 F.3d 851, 855 (3d Cir.), cert. denied, 117 S. Ct. 128 (1996).

In support of their argument, defendants cite our recent decision in United States v. James. There, the defendant was charged with distribution and possession of a "substance containing a detectable amount of cocaine base." Id. (emphasis added). He plead guilty to that charge and stipulated for sentencing purposes that "the relevant quantity of cocaine base is 57.4 grams." Id. at 856 (emphasis added). At his plea colloquy the court asked "Now Mr. James, did you, as charged in Count One of the indictment . . . knowingly, intentionally and unlawfully distribute in excess of five grams of a mixture and substance containing a detectable amount of cocaine base?" Id. (emphasis added). James answered this question

---

1. Note D of section 2D1.1 of the Sentencing Guidelines defines "cocaine base" as "crack." " `Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." U.S.S.G. § 2D1.1 n.D.

6

affirmatively. However, during the plea colloquy, the government made several casual references to "crack":

The parties agree that the relevant quantity of cocaine base . . . is 57.4 grams. That's the total net weight of the crack cocaine that was purchased . . . .

 . . . .

Mr. James exchanged a plastic baggy that contained some suspected crack cocaine. . . . I believe the net weight was 22.0 grams of cocaine base or crack cocaine.

Id. (emphasis added). Although we recognized that "admissions to the court by a defendant during a guilty plea colloquy can be relied upon by the court at the sentencing stage," we concluded that these casual references, without more, did not "amount[ ] to a knowing and voluntary admission that the cocaine base constituted crack." Id. The government had the burden of showing by a "preponderance of the evidence that the substance in question was actually crack." Id. Because we concluded that the government had not met that burden, we vacated James's sentence under the crack cocaine enhancement and remanded for resentencing.

Here, we conclude that the government did meet its burden but just barely. The government's only evidence was the testimony of Officer Kane. Kane is assigned to the task force of the Philadelphia Drug Enforcement Administration and admits that he is not a chemist. See app. at 77a. The district court, nevertheless, permitted him to state his opinion about the identity of the controlled substance involved in this case based upon his years of experience as a police officer. "Courts imposing sentence are free to consider a wide range of relevant material." United States v. Deaner, 1 F.3d 192, 198 (3d Cir. 1993)(internal quotations omitted). Moreover, Rule 704 of the Federal Rules of Evidence "provides that opinion testimony is not objectionable because it embraces an ultimate issue to be decided." United States v. Theodoropoulos, 866 F.2d 587, 591 (3d Cir. 1989)(internal quotations omitted). Thus, it was not improper for the district court to rely upon Kane's testimony at sentencing.

7

The substance seized from defendants did not contain sodium bicarbonate – a common residue in crack cocaine. See app. at 73a. However, Kane explained that the presence of that ingredient is not crucial "[I]t depends on the cooker and how precise he is in his measurements as to whether there would be sodium bicarbonate left behind after the crack cocaine cooking process is over." App. at 74a.2 However, no evidence was presented about the expertise of the person who "cooked" the drugs seized from defendants.3

Kane stressed that the substance seized from defendants was packaged in "clear plastic vials with color caps" which is how crack is commonly packaged on the streets of Philadelphia. App. at 75a. He, therefore, concluded that this substance was in fact "crack cocaine," see app. at 77a, and the strength of that conclusion was tested by cross examination.

Although the identity of the substance defendants possessed need only be established by a preponderance of the evidence, "the preponderance standard is not toothless. It is the district court's duty to ensure that the Government carries this burden by presenting reliable and specific evidence." United States v. Lawrence, 47 F.3d 1559, 1566 (11th Cir. 1995). Officer Kane has over twelve years of experience on the DEA task force, and, in that time, he has participated in over 1000 cases involving crack cocaine. Kane has also attended training sessions on cocaine conducted by the Philadelphia police chemical lab, and himself instructs other narcotics officers about identifying crack and prosecuting such cases. See app. at 74a–75a. Given Kane's experience and expertise, we conclude that the record adequately supports the district court's finding that the controlled substance here was crack cocaine.4

_____

2. See United States v. Sciarrino, 884 F.2d 95, 97 (3d Cir. 1989)(hearsay admissible at sentencing hearing).

3. It is certainly understandable that the government would not know who manufactured a given seizure of drugs, and we do not fault the government for not presenting that evidence. We mention the absence of such testimony because it reduces (but does not negate) the probative value of Kane's explanation for the absence of sodium bicarbonate.

4. We take this opportunity to express our concern over the manner in which the government chose to establish that the substance involved in

8

III.

Defendants next contend that the district court erred in concluding that the government had not breached their plea agreements. "Whether the government's conduct violated the terms of the plea agreement is a question of law" to which this Court gives plenary review. United States v. Wilder, 15 F.3d 1292, 1295 (5th Cir. 1994)(internal quotations omitted); see also United States v. Hernandez, 17 F.3d 78, 80-81 (5th Cir. 1994). As the parties alleging the breach, defendants "bear[ ] the burden of proving the underlying facts establishing a breach by a preponderance of the evidence." Wilder, 15 F.3d at 1295 (internal quotations omitted). "In determining whether the terms of the plea agreement have been violated, the court must

_____

this case was crack. We have previously emphasized the importance of correctly determining that a substance is crack because of the 100:1 sentencing ratio for cocaine base, as compared to cocaine, under the Sentencing Guidelines. See James, 78 F.3d at 855. Indeed, the wisdom and fairness of that ratio, and the social consequences of it, have been discussed and debated in forums so vast and varied that they need not be referenced here. The wisdom of the policy is not for us to determine. However, we would hope that the government would take steps to provide a quality of proof that is consistent with the seriousness of the consequences of that distinction.

We have recently stated that an indictment need not identify the controlled substance at issue as the identity is a factor for sentencing, and not an element of the offense. See United States v. Lewis, 113 F.3d 487, 490 (3d Cir. 1997). However, where a written plea agreement is entered questions of notice and proof at sentencing could be greatly minimized by simply including language in the plea agreement by which a defendant acknowledges the identity of the drugs involved. Similarly, problems of proof could be eliminated by a specific inquiry of the defendant during the Rule 11 colloquy as opposed to only casual references to "crack" or "cocaine base."

Given our limited standard of review here, we cannot say that the government's evidence was insufficient to carry its burden. As we noted above, the government did meet its burden and that ends our inquiry on that issue. Nevertheless, in view of our recent holding in James, we hope the proof presented in this case on the crucial issue of whether the substance was crack cocaine does not reflect a lack of appreciation for the seriousness of that determination or the consequences that flow from it.

9

determine whether the government's conduct is consistent with the parties' reasonable understanding of the agreement." Id. (internal quotations omitted).

In Hernandez, the defendant pled guilty pursuant to a written agreement in which the government agreed to "recommend [that Hernandez receive] credit for acceptance of responsibility and a sentence at the low end of the guideline range." Id. at 80. The agreement was amended in court by the Assistant U.S. attorney who stated on the record "that if Mr. Hernandez should provide substantial assistance to the Government, either I guess through truthful information and testimony if necessary, that the Government may make a motion for downward departure at sentencing." Id. Following his guilty plea, Hernandez provided two types of assistance. "First, he gave the government a hand-drawn map that ostensibly showed where a stash of cocaine could be found." Id. "Second, Hernandez provided the government with information (which the government insists was `stale') concerning drug dealing and illegally possessed guns in the Corpus Christi area." Id. The government argued that the assistance was not substantial and refused to move for a downward departure at Hernandez's sentencing. He then appealed his sentence on grounds that the government had breached the plea agreement. "Considering the type of information that the government should have expected from a defendant like Hernandez, who had been incarcerated for over six months, [the court of appeals] f[ou]nd it difficult to conceive of what more Hernandez could have provided that would be substantial . . . ." Id. at 82. It therefore vacated his sentence and remanded to the district court for a determination of what the parties intended as "substantial assistance."

Here, the government concedes that the defendants did provide truthful and accurate information, but insists that the information was not "complete" as required under the plea agreements. Officer Kane testified that "[he] believe[d] it was truthful, the information they gave us, although I did not believe it was full or complete." App. at 82a. "Because both of the defendants had been involved in the drug business, specifically crack cocaine for numerous years.

10

. . . the accumulation of intelligence that they would have gathered while in the business far exceeded what they were willing to tell us in the proffer." App. at 83a. Kane's suspicions are supported by the defendants' conduct during the "debriefing" sessions. Defendants demanded that they be interviewed together, and, during the interview, "one brother or the other would begin talking about something and the other brother would tell him, no, . . . we're not going to tell them about that. Often times they would laugh at each other." App. at 83a. From this testimony, the district court properly could conclude that the each defendant failed to provide "all information concerning his knowledge of, and participation in the distribution of cocaine base and other crimes about which he has knowledge" as was required by the agreement. App. at 19a, 26a–27a.

We also agree with the district court that the government's in-court clarification of the terms of the plea agreements did not in any way alter defendants' obligation to provide complete information. In open court, the Assistant U.S. Attorney acknowledged that "it's the Government's expectation after the proffer that Mr. Roman, if the information he is able to provide proves truthful and accurate, that he would receive a downward departure motion and it would not be a barrier to receiving such a motion, simply that he could not engage in affirmative investigative techniques but that he solely may be able to provide historical information to the Government." App. at 58a–59a. Defendants argue that, if they provided truthful, accurate, but incomplete historical information, the government was still obligated to move for a downward departure. See Appellant Br. at 16. (Appellant Oscar Roman)("There is no ambiguity in that language . . . Oscar Roman would receive a downward departure motion if the information he provided met two criteria -- truthfulness and accuracy . . . ."). We disagree. Instead, we believe that the district court correctly interpreted this statement to mean that "the fact that [the information defendants provided] was simply historical would not, in and of itself, prevent it from qualifying as substantial assistance." App. at 143a. Therefore, we find no error in the district court's

11

determination that the government did not breach the plea agreement by refusing to file a downward departure motion.

IV.

Samuel Roman alleges error in the district court's denial of his request for CJA funds to retain a psychiatrist. In appropriate cases a court can order that such funds be provided to assist an indigent defendant in preparing for sentencing.

Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court . . . shall authorize counsel to obtain the services.

18 U.S.C. § 3006A(e)(1). However, a court should first "satisfy itself that a defendant may have a plausible defense." United States v. Alden, 767 F.2d 314, 318 (7th Cir. 1984)(emphasis added). "The decision to grant or deny a motion under section 3006A(e) is one committed to the discretion of the district court, and a district court's decision will be disturbed on appeal only if it constitutes an abuse of discretion." Id. at 319.

Samuel Roman wanted a psychiatrist "to testify at sentencing in support of his motion for a downward departure . . . based on mental and emotional conditions and diminished capacity." Appellant Br. at 12 (Appellant Samuel Roman). His mental and emotional condition, he claimed, was "due to, (a) the murder of his father, (b) the fact that from the age of five years old, he grew up without a father, and (c) his extensive abuse of drugs and alcohol." Appellant Br. at 15 (Appellant Samuel Roman).

Under the Guidelines, those factors do not warrant a downward departure. Section 5H1.4 of the Guidelines states that "[d]rug or alcohol dependence or abuse is not a reason for imposing a sentence below the guidelines." U.S.S.G. § 5H1.4 (emphasis added). Section 5H1.12 states

12

that "[l]ack of guidance as a youth and <u>similar circumstances indicating a disadvantaged upbringing are not relevant grounds for imposing a sentence outside the applicable guideline range</u>." U.S.S.G. § 5H1.12 (emphasis added). Taken together, these sections demonstrate that the facts of his case did not warrant a downward departure. Accordingly, the district court did not abuse its discretion by denying Samuel Roman funds to retain a psychiatrist to testify in support of that departure.

He also claims that this denial "deprived him of his rights under the Due Process and Equal Protection clauses of the United States Constitution." Appellant Br. at 12 (Appellant Samuel Roman). For this proposition, he cites <u>Ake v. Oklahoma</u>, 470 U.S. 68 (1985). In <u>Ake</u>, the Supreme Court held that, when a capital defendant demonstrates that his mental condition is a <u>significant factor</u> at his sentencing phase, he is "entitled to the assistance of a psychiatrist . . . and [ ] the denial of that assistance deprive[s] him of due process." <u>Id.</u> at 87. The Court recognized, however, that "[a] defendant's mental condition is not necessarily at issue in every criminal proceeding . . . and it is unlikely that psychiatric assistance . . . would be of probable value in cases where it is not." <u>Id.</u> at 82. "The variable on which [a court] must focus is, therefore, the probable value the assistance of a psychiatrist will have . . . and the risk attendant on its absence." <u>Id.</u> at 84. Since the psychiatric testimony that Samuel Roman wanted to present would have been irrelevant, the court did deprive him of due process in refusing to authorize funds for a psychiatrist.

V.

For the reasons set forth above, we will affirm defendants' judgments of sentence entered on October 16, 1996.

A True Copy:
Teste:

<u>Clerk of the United States Court of Appeals</u>
<u>for the Third Circuit</u>

13