

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-7-2003

# USA v. Williams

Precedential or Non-Precedential: Non-Precedential

Docket 02-1649

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Williams" (2003). *2003 Decisions.* Paper 896.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/896

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos.:  02-1649 & 02-1650
_____

UNITED STATES OF AMERICA

v.

LARRY WILLIAMS,

Appellant in 02-1649

UNITED STATES OF AMERICA

v.

JOSEPH VIGGIANO,

Appellant in 02-1650
_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. No. 00-CR-00338)
District Judge: Honorable Yvette Kane
_____

Argued December 3, 2002

Before: ROTH, SMITH and *CUDAHY, <u>Circuit Judges</u>

_____

_____

*Hon. Richard D. Cudahy, United States Court of Appeals for the Seventh Circuit, sitting by designation

Dennis E. Boyle, Esq. (Argued)

Nauman, Smith, Shissler & Hall, LLP
200 N. 3rd Street, 18th Floor
P.O. Box 840
Harrisburg, PA 17108-0840

Counsel for Appellant Larry Williams


Joshua D. Lock, Esq. (Argued)
Goldberg, Katzman & Shipman, P.C.
320 Market Street
P.O. Box 1268
Harrisburg, PA 17108-1268

Counsel for Appellant Joseph Viggiano

Thomas A. Marino, United States Attorney
Gordon A.D. Zubrod, Assistant United States Attorney (Argued)
Federal Building
228 Walnut Street
Harrisburg, PA 17108

Counsel for Appellee

(Filed: January 7, 2003)

---

OPINION OF THE COURT

---

D. BROOKS SMITH, Circuit Judge

Appellants in this case each pled guilty to one count of conspiracy to commit mail

and wire fraud, a violation of 18 U.S.C. § 371. Disappointed with the sentences they

received, appellants seek to reverse the District Court's sentencing order. We have

jurisdiction over an appeal from a final judgment of conviction and sentencing pursuant to

28 U.S.C. § 1291. The factual findings of a district court are subject to review for clear error. United States v. Roman, 121 F.3d 136, 140 (3d Cir. 1997). A district court's interpretation and application of the Sentencing Guidelines are subject to plenary review. Id. Because the factors the District Court considered were appropriate and the factual findings were not clearly erroneous, we will affirm.

## I.

Larry Williams founded and incorporated MICOM, Inc., a telemarketing firm which offered and sold "licensed application preparation services" for paging and mobile radio Federal Communication Commission ("FCC") licenses. Mr. Williams later recruited Joseph Viggiano to run the day-to-day operations of the firm. In November of 1994, MICOM began to advertise to potential investors that the firm would assist them in acquiring the FCC licenses, alleging that the licenses would lead to huge profits through either lease or resale to large telecommunications firms. In fact, the licenses had no resale value and telecommunications companies do not lease such licenses from individuals. Nonetheless, approximately 175 investors gave MICOM about $1,650,000 based on these false representations.

After initially founding MICOM and developing its fraudulent licensing concept, in 1995, Mr. Williams entered into negotiations with Mr. Viggiano to sell his interest in MICOM. Once a deal was reached, Williams transferred his interest in the on-going conspiracy to Viggiano for $60,000, an amount that represented "one-half the value of the business." Between August 10 and November 17, 1995, Viggiano proceeded to wire

3

transfer a total of $62,000 to Williams, who had taken up residence in Brazil.

A few months later, the Federal Trade Commission ("FTC") closed MICOM following an investigation by that agency and instituted civil proceedings against Viggiano. In anticipation of this litigation, Viggiano made efforts to conceal his role in the conspiracy and was not fully forthcoming with investigators. However, once a later criminal investigation was begun, Viggiano ultimately admitted to his role in the conspiracy and provided the government with information that led to the apprehension of his co-defendant Williams.

In December of 2000, a federal grand jury returned an indictment against both Williams and Viggiano. After a plea agreement, Williams was sentenced to 40 months imprisonment and three years of supervised release. He was also ordered to pay restitution. Although Williams asserted he had withdrawn from the conspiracy prior to most of the victims suffering any loss, his sentence was based on the total loss resulting from the fraud perpetrated by MICOM. Viggiano was sentenced to 44 months imprisonment and three years of supervised release. He, too, was ordered to pay restitution. For his efforts in assisting in the apprehension of Williams, Viggiano was granted a downward departure pursuant to U.S.S.G. § 5K1.1; however, the District Court concluded that his overall conduct did not entitle him to a downward adjustment for acceptance of responsibility.

**II.**

Appellant Williams asserts that the District Court erred in sentencing him based on

the total fraud of $1,650,000 committed by MICOM because Williams voluntarily withdrew from the conspiracy before most of the damages occurred. As there was not a "severance of all ties to the business," it was appropriate for the District Court to find that Williams had not abandoned the conspiracy. See United States v. Lowell, 649 F.2d 950, 955-56 (3d Cir. 1981). The sentence was therefore based on a reasonable estimate of the loss Williams caused.

The evidence considered by the District Court indicates that Williams never "abandoned the enterprise and its goals." United States v. Steele, 685 F.2d 793, 803-04 (3d Cir. 1982) (emphasis added). The word "abandon" is commonly defined as to "desert, surrender, forsake, or cede." Black's Law Dictionary 9 (4th ed. 1957). Williams did nothing of the sort. Rather, he sold his interest in MICOM, an interest that represented one-half the present value of the conspiracy, for $60,000.[1] That alone eviscerates any assertion of abandonment, and distinguishes this case from cases such as Steele and Lowell.

The record shows that Williams continued to receive payments from Viggiano and MICOM as late as November 17, 1995. That was a mere two months before the FTC shut down MICOM and instituted proceedings in January 1996. Unlike Lowell, there was not a "severance of all ties to the business," but a continuing interest by Williams in the success

---

[1]Perhaps if Williams had truly abandoned MICOM, walking away without taking any compensation for his ownership interest in the criminal conspiracy, this case would present a more difficult question. However, selling one's interest is hardly equivalent to abandoning that interest.

5

of MICOM. See Lowell, 649 F.2d at 955-56. While the defendant in Lowell "no longer derived any income from the transactions," 649 F.2d at 957, Williams received incremental payments that depended upon the revenue and profits of MICOM until shortly before the FTC caused MICOM to cease operations.

After reasonably concluding that Williams had not withdrawn from the conspiracy, the District Court correctly applied the Guidelines to its findings. Where there is "a clear causal connection between the fraud and the [victims'] losses," a district court should sentence based on the total losses the fraud has caused. See United States v. Neadle, 72 F.3d 1104, 1110 (3d Cir. 1995). "An intervening force that increases a fraud-related loss will not decrease the loss valuation but will only provide possible grounds for a downward departure." Id. Williams founded the company, developed the fraudulent plan and sales pitch, and recruited the manager for MICOM, a fraudulent conspiracy resulting in $1,650,000 in loss. He never abandoned the conspiracy, but sold his interest and continued to receive payments from the profits of the conspiracy almost until its end. Based on this record, it was not clearly erroneous for the District Court to conclude that a "causal connection" existed between Williams and the total loss from the MICOM conspiracy.

We will affirm the judgment and sentence of the District Court as to appellant Williams.

**III.**

Appellant Viggiano argues that the District Court erred in refusing to grant him a sentence reduction for his acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).

6

Appellant bases this assertion on three grounds: (1) that the District Court improperly considered his pre-indictment conduct in determining whether Viggiano cooperated with authorities; (2) that the District Court improperly considered Viggiano's failure to voluntarily make restitution because he lacked the financial means to do so; and (3) that his post-indictment conduct was forthcoming and not evasive.

Appellant first argues that the District Court erred as a matter of law in considering any conduct by Viggiano that preceded the formal criminal indictment on December 13, 2000. Although the case is neither precisely on point nor controlling, appellant primarily relies upon United States v. Jeter, 191 F.3d 637 (6th Cir. 1999). In Jeter, the Sixth Circuit determined, as a matter of law, that the District Court erred in considering state law charges that preceded the defendant's federal indictment and subsequent federal guilty plea. We believe that Jeter is inconsistent with the precedent of this Circuit and decline to adopt here its bright-line rule. See United States v. Ceccarani, 98 F.3d 126, 130 (3d Cir. 1996) (rejecting the argument that "§ 3E1.1(a) of the Guidelines directs that examination of the defendant's acceptance of responsibility correlates only to conduct related to the specific offense before the sentencing court").

As noted by the District Court, appellant Viggiano was not always forthcoming with the government concerning his role in the conspiracy at issue. In addition to his conduct before the FTC, Mr. Viggiano's evasiveness continued into the early stages of the criminal investigation. In Mr. Viggiano's initial meeting with the agents investigating the criminal charges, he was not forthcoming, and denied any wrongdoing. While Mr. Viggiano

7

subsequently made a full admission of his involvement in the conspiracy and assisted the agents in locating his co-defendant, Larry Williams, we do not believe it was erroneous for the District Court to have considered his pre-indictment conduct where, as here, the prior denials were of the same conduct at issue in the criminal offense and the denials continued into the criminal investigation.

Appellant also asserts that the District Court erred in considering Appellant's failure to pay any portion of the $1.6 million in restitution Appellant owed. Appellant contends that he lacked the financial ability to pay the fine; and that it was therefore an error for the District Court to hold that failure to pay against him. We do not believe the District Court was in error.

Counsel for Viggiano admitted at sentencing that his client had paid no restitution "since January of 1996." While the record at sentencing indicated that Viggiano then lacked the means to pay a substantial fine, there was no explanation provided for why he had made no effort to pay restitution over the prior five years. In fact, Viggiano had sought to have his civil restitution obligations from the FTC proceeding discharged through bankruptcy. While a failure to pay restitution might not, by itself, justify a denial of an acceptance of responsibility reduction when a defendant lacks the financial means to pay, where such a failure was combined with what could be interpreted as an effort to avoid responsibility for those frauds and apparent indifference to the victims of the crime, it was not an error for the District Court to consider that fact in sentencing.

Viggiano's final argument is that his post-indictment conduct was not, in fact,

8

evasive based on United States v. Halper, 490 U.S. 435 (1989). Although Viggiano claims he had a potentially valid constitutional basis for resisting the criminal prosecution, specifically that the criminal prosecution subjected him to "double jeopardy" in light of his prior civil penalty, he asserts that he pled guilty and cooperated. However, our reading of the Supreme Court's decision in Hudson v. United States, 522 U.S. 93 (1997), indicates that Viggiano's proposed constitutional argument would have had little chance of success. See id. at 102 (noting that United States v. Halper, 490 U.S. 435 (1989), proved "unworkable" and refusing to bar a subsequent criminal prosecution after the government secured an initial civil penalty). Therefore, Viggiano's alleged "forbearance from asserting" this argument need not be given significant weight.

A final point worth noting is that the District Court did credit Mr. Viggiano's role in the investigation and apprehension of co-defendant Larry Williams through a downward departure under U.S.S.G. § 5K1.1. Moreover, the District Court did not appear to give excessive weight to the factors Viggiano claims were inappropriately considered. The primary impetus for the District Court's denial of the reduction for acceptance of responsibility seemed to be a belief that Viggiano failed both to acknowledge the harm caused to the victims of his crime and to demonstrate remorse for those harms. We therefore conclude that, despite his assistance in the apprehension of his co-defendant, it was not clear error for the District Court to reason that Mr. Viggiano had not sufficiently exhibited an acceptance of responsibility so as to justify an additional sentence reduction under § 3E1.1(a) of the Guidelines.

We will therefore affirm the judgment and sentence of the District Court as to appellant Viggiano.

TO THE CLERK:
Please file the foregoing opinion.

/s/ D. Brooks Smith
Circuit Judge

DATED: January 7, 2003