

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-14-2003

# USA v. Jackson

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3411

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Jackson" (2003). *2003 Decisions.* Paper 109.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/109

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3411

UNITED STATES OF AMERICA

v.

KEVON JACKSON,
a/k/a FABIAN

Kevon Jackson,
Appellant

On Appeal from the United States District Court
for the District of New Jersey
D.C. Criminal No. 01-cr-00354
(Honorable Garrett E. Brown, Jr.)

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 27, 2003
Before:  SCIRICA, *Chief Judge*, NYGAARD and AMBRO *Circuit Judges*

(Filed: November 14, 2003 )

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

Defendant Kevon Jackson appeals his conviction and sentence for conspiracy to

distribute more than 50 grams of "crack" cocaine and more than five grams of powder

cocaine, in violation of 21 U.S.C. § 846. Jackson argues the government failed to demonstrate by a preponderance of the evidence that the controlled substance was crack cocaine. Jackson also alleges the enhanced sentence for cocaine base containing baking soda as opposed to ordinary cocaine base violates the Eighth Amendment. For reasons that follow, we will affirm the conviction and sentence.

## I.

Kevon Jackson was charged in a seven-count federal indictment for drug offenses. Jackson pled guilty to Count One, conspiracy with intent to distribute in violation of 21 U.S.C.A. § 841(a)(1).

The conspiracy involved six separate hand-to-hand cocaine sales, taking place between November 14, 2000 and April 20, 2001. Drug Enforcement Administration Special Agent Eric Brown, the case agent in the Jackson investigation, instructed a cooperating witness to attempt to buy cocaine from Jackson. The cooperating witness, who had a prior relationship with Jackson, purchased 8.9 grams of cocaine powder from Jackson on November 14, 2000, a fact not in dispute.

Agent Brown next instructed the cooperating witness to purchase either cocaine hydrochloride or "crack" cocaine from Jackson.[1] On January 18, 2001, the witness asked Jackson for cocaine hydrochloride and asked if it would "cook up well" into crack.

---

[1] "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy rocklike form. Sentencing Guideline § 2D1.1.

2

Jackson replied, "If you're worried about that, why don't you just buy some crack." The cooperating witness bought 13.1 grams of a "yellow chunky powder substance" from Jackson. The next four sales, two made on February 6, 2001 and one each on April 19, 2001 and April 20, 2001, also involved a "yellow chunky powder substance."

At a hearing, the District Court heard testimony and evidence to determine the identity of the drugs sold by Jackson. The first government witness, Agent Brown, established his expertise in identifying drugs by testifying that he had been involved in approximately 100 investigations, approximately 50 of which involved crack cocaine, and that he had personally seen crack cocaine about 150 times. He testified that he had purchased crack cocaine as an undercover agent five times and had received government training to be able to identify crack cocaine. Agent Brown then identified the substance sold by Jackson to the corroborating witness in each of the five transactions as crack cocaine.

DEA forensic chemist Florence Wong also testified on behalf of the government. Ms. Wong had analyzed all five non-powder samples of cocaine that the cooperating witness purchased from Jackson, and testified that each sample contained both cocaine base and sodium bicarbonate (baking powder).

In rebuttal, Jackson offered the transcript of the testimony of chemist Warren James Woodford in *United States v. Ricqui Watkins*, Cr. No. 00-415 (D.N.J. Jan. 17, 2002). Woodford had testified that cocaine base "is not crack," and gave a brief history

3

of the term "crack." Not finding the transcript of Woodford's testimony "helpful or persuasive," the District Court concluded that Jackson had made five sales of crack cocaine during the course of the conspiracy and sentenced him to 168 months imprisonment.

Jackson contends the District Court erred in finding that his controlled substance offense involved crack cocaine and in sentencing him under the Sentencing Guidelines' crack cocaine enhancement provision. He also argues that enhanced punishment for cocaine base with baking soda is irrational and violates the Eighth Amendment principle of proportionality.

We have jurisdiction under 18 U.S.C. § 1291. We review the District Court's finding that the cocaine base was crack cocaine for clear error, *United States v. Fuentes,* 954 F.2d 151, 152-53 (3d Cir. 1992), reversing "only if we are left with a definite and firm conviction that a mistake has been made." *United States v. Dent,* 149 F.3d 180, 189 (3d Cir. 1998). But we retain plenary review of issues of law raised by application of the Sentencing Guidelines. *United States v. Roman,* 121 F.3d 136, 140 (3d Cir. 1997).

## II.

When applying Section 2D1.1 of the Sentencing Guidelines, the government must prove by a preponderance of the evidence that the substances in question were crack cocaine. *United States v. Roman,* 121 F.3d 136, 141 (3d Cir. 1997). In this case, the government presented the testimony of DEA Special Agent Brown and DEA Forensic

4

Chemist Wong. Agent Brown identified the crack cocaine pursuant to his extensive experience, while Ms. Wong identified the substance as "cocaine base," which the Sentencing Guidelines equate with "crack."[2] This evidence is more compelling than testimony that this Court has previously accepted in identifying crack cocaine. *See Roman,* 121 F.3d at 141 (holding expert police testimony sufficient to identify crack cocaine). We find no "clear error" here and hold that the government met its burden of proof.

Jackson next argues that the Sentencing Guidelines irrationally punish offenses involving cocaine base with baking soda more severely than those involving cocaine base. This distinction is inaccurate. The sentencing guidelines do not distinguish between "cocaine base with baking soda" and "cocaine base." Baking soda is used to dilute

---

[2]Section 2D1.1 of the Sentencing Guidelines states that "[c]ocaine base, for the purposes of this guideline, means 'crack.'"

Cocaine is generally imported into the United States in powder cocaine form (cocaine hydrochloride), a salt with the chemical formula $C_{17}H_{22}ClNO_4$. Users generally ingest this form of cocaine by dissolving it in water and then injecting it, or snorting it. Cocaine base has the chemical formula $C_{17}H_{21}NO_4$; it is generally melted and the vapors are inhaled. *United States v. Booker,* 70 F.3d 488, 490-91 (7th Cir. 1995).

There are two primary methods of converting powdered cocaine into cocaine base: the crack cocaine method and the freebase cocaine method. The freebase method involves dissolving powder cocaine in ammonia and adding ether or another organic solvent. This process is dangerous, as the ether is flammable. *Id.* In the early 1980's a much safer method for producing cocaine base developed, where powder cocaine is dissolved in baking soda (sodium bicarbonate) and water, resulting in a pasty mixture. As the pasty mixture dries, it makes a cracking sound, resulting in the street term "crack." *Id.*

The method for producing crack cocaine does not change its chemical structure, so the substance cannot be distinguished from other cocaine bases through chemical testing.

5

cocaine hydrochloride, and the resulting substance is commonly called "crack." The presence of sodium bicarbonate is thus a strong indicator that a substance is crack cocaine. *United States v. Waters,* 313 F.3d 151, 155 (3d Cir. 2002).

The sentencing guidelines punish crack cocaine more severely than cocaine powder[3] to effectuate Congress' intent. *United States v. Frazier,* 981 F.2d 92, 96 (3d Cir. 1992).[4] We have rejected a similar Eighth Amendment disproportionality claim in *Frazier, 981 F.2d* at *95-96,* as have other circuits, *see United States v. Cyrus,* 890 F.2d 1245, 1248 (D.C. Cir. 1989); *United States v. Malone,* 886 F.2d 1162, 1166 (9th Cir. 1989); *United States v. Colbert,* 894 F.2d 373, 374-75 (10th Cir. 1990). We similarly reject this challenge.[5]

---

[3]The punishment for a person convicted of a crack cocaine is not 100 times greater than a similar offense involving cocaine powder, as Jackson implies. Instead, the offender will receive a sentence between two and six and one-half times more severe than the sentence of one convicted of trafficking the same amount of cocaine powder. *United States v. Spencer,* 160 F.3d 413, 413 (7th Cir. 1998).

[4]Congress has many reasonable grounds for differentiating between crack cocaine and cocaine powder, due to differences in addictiveness, method of use, and collateral social effects of the traffic in the drug. *Id.*

[5] As the D.C. Circuit explained:
> There have been only three recognized instances of disproportionality rising to the level of an eighth amendment violation. These involved condemning a man to death for a non-homicide crime, imposing life without parole for a nonviolent recidivist who passed a bad check for $100, and sentencing a man in the Philippines to 15 years hard labor for falsifying a government form. A ten-year sentence for drug possession simply does not approach the same level of gross inequity."

*Cyrus,* 890 F.2d at 1248.

**III.**

For the foregoing reasons, we will affirm the judgment of the District Court.

TO THE CLERK:

Please file the foregoing opinion.

/s/ Anthony J. Scirica
*Chief Judge*

7