**UNITED STATES of America**

v.

**John J. POLTONOWICZ, Appellant.**

No. 08–2772.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Nov. 6, 2009.

Filed: Dec. 2, 2009.

Richard J. Zack, Esq., Office of United States Attorney, Philadelphia, PA, for United States of America.

John J. Poltonowicz, Lewisburg Satellite Camp, Lewisburg, PA, for Appellant.

BEFORE: SCIRICA, Chief Judge, JORDAN and COWEN, Circuit Judges.

## OPINION

COWEN, Circuit Judge.

John J. Poltonowicz, *pro se,* appeals the judgment of conviction and sentence following his trial conviction for one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, twelve counts of aiding, assisting, and counseling the filing of false tax returns in violation of 26 U.S.C. § 7206(2), four counts of mail fraud in violation of 18 U.S.C. § 1341, three counts of wire fraud in violation of 18 U.S.C. § 1343, five counts of making false statements on loan applications in violation of 18 U.S.C. § 1014, and two counts of making false statements to the Internal Revenue Service ("IRS") in violation of 18 U.S.C. § 1001. We will affirm.

## I. BACKGROUND

Poltonowicz began his career with the IRS as an analyst in its Criminal Investigation Division. In 1992, he left the IRS and began operating a tax preparation business. Over time his business expanded to include additional offices and he hired additional tax preparers.

By 2003, the IRS began to suspect fraud and sent an undercover agent to his office with a recording device. During the course of the taped conversation, Poltonowicz informed the agent that he would include business expenses in her return, even though she repeatedly told him that she had no business expenses. Although the agent never mentioned charitable contributions, and provided him with no evidence whatsoever of any such contributions, he included $2,190 in cash contributions to charity and $495 in non-cash contributions to charity on the agent's return. As a result, the agent's tax return showed that she was entitled to a $12 refund, instead of reflecting that she owed $1,012 in additional taxes. Subsequently, the agent requested a meeting with Poltonowicz to discuss a letter she received from the IRS informing her that she would be audited. Again, the agent wore a recording device. He admitted to the preparation of a false tax return and

that he included the false deductions to save her from paying additional taxes (as he operated under the assumption that she would not be audited). He reassured her that she would not get in trouble for the fraudulent return.

Poltonowicz agreed to plead guilty to one count of filing false tax returns and the IRS revoked his ability to file electronic tax returns. Thereafter, he formed Matrix Tax Service, Inc. ("Matrix") in the name of June M. McMackin, his long-time roommate and housekeeper. He filed an account with the IRS under her name to again begin filing electronic tax returns. Prior to trial, he moved, *pro se*, to suppress the evidence obtained during searches of his home and Matrix's offices. Poltonowicz appeared at the suppression hearing *pro se* with the assistance of an attorney serving as a legal advisor. He testified that he was not the owner of Matrix, that Ms. McMackin owned Matrix, and that she had interviewed and hired him. The district court denied his motion.

At trial, several former employees testified that Poltonowicz instructed them to claim nonexistent employee business expenses, to overstate charitable contributions, and to understate income. Additionally, these witnesses testified that they observed him prepare false tax returns in this manner on numerous occasions. Numerous clients testified about their fraudulent tax returns. Some of these clients were suspicious of the fictitious charitable contributions, but Poltonowicz reassured them that those deductions were standard and would not trigger an audit. Several of these clients had not realized that they had submitted fraudulent tax returns until audited by the IRS.

The government also presented evidence of his affinity for overstating income when beneficial. He obtained three mortgages for his home and a lease for an automobile by providing his creditors with W–2 tax forms that overstated his income. He provided W–2s falsified in the same manner for his father and certain clients to assist them in obtaining loans. In each of these instances, the W–2s overstated income and were not the W–2s actually filed with the IRS for that particular year.

The jury convicted Poltonowicz of all of the charges except for two counts of making false statements to obtain a loan in violation of 18 U.S.C. § 1014. The parties then prepared for sentencing, for which he retained counsel. The pre-sentence investigation report ("PSR") estimated the tax loss at $408, 275.[1] Poltonowicz moved for an order compelling the government to produce the documents on which it relied. In particular, he asserted that the government was required to support its estimated tax loss with tax returns, memoranda of interviews of clients, and audit reports and demanded production of these documents. The government countered that under the Sentencing Guidelines, it was permitted to support its estimate with the 200 audited tax returns presented at the trial, but that nonetheless, he had all of the requested documents one year prior to his trial.

The district court conducted a sentencing hearing, at which Poltonowicz appeared with counsel. The government offered testimony as to its methodology in calculating the tax loss. It restricted the calculations to tax returns that were personally prepared by Poltonowicz as opposed to any of the returns prepared by his employees (despite evidence that he encouraged and sometimes required employees to include false deductions). Of that subset of tax returns, the government included only those that contained one of the methods of falsifying tax returns established at trial, such as fictitious cash

---

1. The government later amended the PSR to reflect an estimated tax loss of $419, 853.20.

and non-cash charitable contributions, employee non-reimbursed expenses, and claims of eligibility for the earned income tax credit. The government filtered that subset to include two types of returns: (1) returns for which the IRS had conducted an audit and had subsequently assessed the taxpayer with additional tax liability based on the tax payer's inability to substantiate their return, or (2) returns for taxpayers interviewed, who confirmed that they did not provide any evidence of the deductions at issue or request that they be included. The estimate of $419,853.20, in the manner calculated, was actually under inclusive.

Poltonowicz argued that the court should limit the calculation to those tax returns of former clients whom the government interviewed, which would result in a tax loss of $80,000 to $200,000. He argued that it was improper for the government to include tax returns based solely on audits as some of those fictitious deductions might have been at the direction of his clients.

The District Court credited the government's testimony and found a total tax loss in excess of $400,000. The District Court determined that enhancements for obstruction of justice and the leadership role were appropriate. It sentenced Poltonowicz to forty-eight months of imprisonment, well below the guidelines range, and imposed a $10,000 fine, a $2,700 special assessment, and $400,000 in restitution.

## II. DISCUSSION[2]

Poltonowicz asserts that the District Court erred as it: (1) miscalculated the tax loss, (2) relied on fraudulent tax data submitted by the government in support of its

sentencing recommendation, (3) improperly assessed a two-level enhancement for obstruction of justice, (4) improperly assessed a four-level enhancement for being the leader of criminal activity, and (5) improperly imposed restitution in the amount of $400,000.

### A. Calculation of Tax Loss[3]

"For tax offenses, a defendant's base offense level is determined by the tax loss." *United States v. Gricco*, 277 F.3d 339, 355 (3d Cir.2002) (citing U.S. Sentencing Guidelines Manual §§ 2T1.1(a)(1), 2T1.9). "In determining the total tax loss attributable to the offense ... all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated." U.S. Sentencing Guidelines Manual § 2T1.1 cmt. n. 2. Further, "[a] sentencing court is permitted to make 'a reasonable estimate based on the available facts' where the exact amount of tax loss may be uncertain." *Gricco*, 277 F.3d at 356; *see also* U.S. Sentencing Guidelines Manual § 2T1.1 cmt. n. 1 (noting that when "the amount of the tax loss may be uncertain; the guidelines contemplate that the court will simply make a reasonable estimate based on the available facts").

Poltonowicz contends that the District Court erred in finding that the tax loss exceeded $400,000. At the sentencing hearing, he argued that the evidence supported a tax loss of $80,000 to $200,000. For the first time, he now asserts on appeal that the evidence supports a tax loss of $17,960. He faults the District Court

**2.** The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

**3.** We review factual findings, such as the calculation of a tax loss attributable to a defendant's criminal activity, for clear error. *See United States v. Roman*, 121 F.3d 136, 140 (3d Cir.1997).

for relying on extrapolated data and asserts that the District Court should have excluded losses for tax payers whom the government did not interview.

■ The district court relied on evidence presented at trial and the sentencing hearing to reach its conclusion. The government established the *modus operandi*—preparing tax returns with fictitious data for charitable contributions, employee non-reimbursed expenses, and claims of eligibility under the earned income tax credit. It did not err in including tax returns in the tax loss calculation which had been subject to and had failed an audit by the IRS, even if the government did not interview the tax payer. Poltonowicz is on audiotape informing a potential client that he knew exactly how to claim fictitious deductions without getting caught. Indeed, the evidence suggests a much larger tax loss. He personally prepared 20,000 to 25,000 tax returns, yet the government calculated its tax loss based on just 225 of those returns. One former employee testified that at least 25% of the returns Poltonowicz filed contained fictitious deductions. The government excluded from its calculation any returns that were prepared by employees, even though several employees testified that he directed them to add fictitious deductions to the returns they filed. On average, 50–54% of returns claim charitable contributions; whereas, 98% of Poltonowicz's clients claimed such deductions. Notably, his clients uniformly claimed to donate in one of three precise amounts: $490, $495, and $500.

■ Poltonowicz also challenges the government's calculation of additional losses by comparing his average claims for certain deductions, such as the charitable deduction, with that of the national average. He asserts that it was improper to

compare his clients to the national average because his clients were not average tax payers; rather, his clients consisted of blue-collar, religious, conservative tax payers who were far more likely to make charitable contributions than the average tax payer. He makes a similar argument with respect to the government's comparative information on employee non-reimbursed expenses. These arguments lack merit. The District Court did not rely on the government's comparative data in reaching its conclusion that the tax loss exceeded $400,000. The District Court based its conclusion on the audited returns and mentioned the additional statistical evidence in noting that the government's calculation was extremely conservative. There is no error with a District Court's consideration of statistical evidence in a case involving upwards of 20,000 tax returns.

The government presented a conservative tax loss calculation. This estimate was reasonable given the evidence before the District Court. We reject the challenge to the tax loss calculation.

## B. Prosecutorial Misconduct[4]

Poltonowicz asserts that the government supported its calculation with several returns that it knew were inaccurate to reach the threshold tax loss amount of $400,000. This contention lacks merit. The government excluded the returns in question and still reached a tax loss of $419,853.20. Poltonowicz presented no evidence of any inaccurate tax returns, nor did he present any evidence that would negate his liability for the tax losses identified by the government. We reject Poltonowicz's claim of prosecutorial misconduct.

---

4. We review a district court's ruling on prosecutorial misconduct for abuse of discretion.

*See United States v. Brennan,* 326 F.3d 176, 182 (3d Cir.2003).

### C. Obstruction of Justice Finding

Poltonowicz asserts that the District Court erred in assessing a two-level enhancement under § 3C1.1 of the U.S. Sentencing Guidelines Manual, for obstruction of justice related to his testimony at the suppression hearing regarding his interest in Matrix. He asserts that there was nothing false about his testimony. The record belies this assertion.

### D. Leader of Criminal Activity

■ Under § 3B1.1 of the Sentencing Guidelines, courts may increase a defendant's offense level by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S. Sentencing Guidelines Manual § 3B1.1. Poltonowicz exerted control over McMackin and others to further his criminal scheme. Two former employees testified that they prepared tax returns containing fictitious deductions at his direction. We reject the challenge to this enhancement.

### E. Restitution

■ Poltonowicz contends that the district court erred in ordering him to pay restitution as convictions for tax fraud are excepted from those crimes for which restitution can be ordered. There is no legal authority for this claim. The district court had authority to impose restitution under 18 U.S.C. §§ 3583(d), 3563(b)(2).

### III. CONCLUSION

We will affirm the judgment of conviction and sentence of June 12, 2008.